UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

LYDELL MARVIN BEGAY,

      Plaintiff,

v.                                                  Case No.  1:15-cv-00358

UNITED STATES OF AMERICA,

      Defendant.

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Lydell Marvin Begay, in the above-entitled and numbered cause of action, by and through his attorneys, the Branch Law Firm and Cohen & Zedalis LLP, and for his Complaint for Damages, states as follows:

### Nature of the Case

1. This action arises out of the shockingly poor medical care and treatment that Defendant United States of America, through its Northern Navajo Medical Center, an Indian Health Services facility, provided to 18-year-old Lydell Marvin Begay ("Lydell Begay") in March 2014. Northern Navajo Medical Center's poor care ultimately caused Lydell Begay severe and permanent disabilities: paralysis of the arms and legs, the loss of the ability to speak, and brain damage—an overall condition known as "locked-in syndrome," meaning Lydell Begay is, for the most part, permanently imprisoned in his own body, unable to interact with the world around him.

2. Lydell Begay, an enrolled member of the Navajo Nation, visited the emergency room at Northern Navajo Medical Center ("NNMC") in Shiprock, New Mexico, on March 6, 2014, complaining of dizziness, severe headaches, left-sided weakness, unsteadiness, and blurred

1

vision. Although Lydell Begay's symptoms should have immediately raised concerns regarding potentially serious neurological problems, NNMC's physicians and staff examined Mr. Begay, diagnosed him as having conjunctivitis—more commonly known as "pink eye"—and instructed him to go home and rest. No neurological consultation was requested or given, nor was any type of neurological evaluation performed. Instead, NNMC physicians and staff simply discharged Lydell Begay, giving him ibuprofen and a prescription for eye drops. One week later, on March 13, 2014, Lydell Begay again presented to NNMC with similar symptoms. A CT scan showed that Lydell Begay had an occipital mass; he was later transferred to the University of New Mexico Hospital via air transport. Twenty-four hours later, Lydell Begay suffered bilateral pontine infarcts—or areas of brain death—that resulted in paralysis, the need for intubation and respiratory support, and loss of speech.

3. The negligence of NNMC and its physicians and staff is practically unparalleled in the medical community. For example, the physician who treated Lydell Begay, Annicol Marrocco, M.D., was acting under restricted medical licenses and required close supervision. NNMC provided no such supervision. The nursing staff that initially evaluated Lydell Begay failed to note any neurological deficits, thus failing to trigger or request any neurological consultation or evaluation. No staff member of NNMC challenged what was obviously deficient and substandard medical treatment and evaluation by Dr. Marrocco. In fact, there was no oversight in place in the emergency room to ensure that proper medical care was being provided to Lydell Begay or any other member of the Navajo Nation.

4. As a result of Defendant's negligent medical care, misdiagnosis and failure to adequately credential, staff, or supervise the emergency room at NNMC, Lydell Begay suffered catastrophic and permanent injuries, injuries that have all but taken this young man's life away.

## The Parties

5. Plaintiff Lydell Begay is, at all times material to this action, a resident of Fruitland, County of San Juan, State of New Mexico.

6. Defendant United States of America, through its Department of Health and Human Services, has direct oversight of Indian Health Services ("IHS"), a federal agency that provides health care services to members of federally-recognized tribes, including the Navajo Nation. The Navajo Area Indian Health Service is one of 12 IHS administrative units and provides medical services at various hospitals, health centers, and health stations in the Four Corners Area, including NNMC. The United States of America bears liability under the Federal Tort Claims Act, 28 U.S.C. § 2672, for any and all negligent acts and omissions alleged herein by federal employees acting in the scope of their employment at NNMC, including NNMC or IHS personnel who: (1) negligently provided medical services to Lydell Begay at NNMC on March 6 and/or March 13, 2014; and/or (2) failed to ensure that those providing direct care to Lydell Begay at NNMC on March 6 and/or March 13, 2014 had adequate supervision; and/or (3) were negligent in the hiring, credentialing and/or granting of privileges to those who provided medical care to Lydell Begay at NNMC on March 6 and/or March 13, 2014.

## Jurisdiction and Venue

7. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 ("FTCA"). This Federal District Court is vested with exclusive subject matter jurisdiction over this action.

8. Plaintiff Lydell Begay has exhausted the administrative requirements set forth in 28 U.S.C. § 2675(a), by submitting Standard Form 95, Claim for Damages, Injury, or Death to the United States Department of Health and Human Services ("USHHS"), 330 C Street, SW,

Switzer Building, Suite 2600, Washington, D.C., 20201, on or about June 2, 2014. After making a written request for and receiving extensive supporting documentation, the USHHS denied Plaintiff's claim by letter dated January 22, 2015.

9. This Court has jurisdiction over the asserted claims because none of the negligent acts or omissions alleged herein—medical malpractice; negligent supervision; negligent hiring/screening/credentialing—are the types of discretionary functions excluded from the FTCA under 28 U.S.C. § 2680(a).

10. Venue is properly in this District pursuant to 28 U.S.C. § 1402(b) because Plaintiff resides in the State of New Mexico and the acts complained of occurred in the State of New Mexico.

**Statement of Facts**

11. On March 6, 2014, Lydell Begay presented to the emergency room of NNMC complaining of dizziness, left-sided weakness, severe headaches, unsteadiness, and blurred vision.

12. The medical staff of NNMC's emergency room neither conducted nor ordered any diagnostic tests or scans, or used any other diagnostic procedures on Lydell Begay to identify the cause of his symptoms.

13. One of the physicians who attended to Lydell Begay in the NNMC emergency room, Dr. Annicol Marrocco, M.D. ("Dr. Marrocco"), failed to conduct any tests, scans, or use other diagnostic tools on Lydell Begay. Instead, she told Lydell Begay to go home and rest, take ibuprofen, and wrote him a prescription for eye drops. The medical records reflect that Lydell Begay's discharge diagnosis was "conjunctivitis," a condition more commonly known as "pink eye."

14. Following his discharge, Lydell Begay showed no sign of improvement, and subsequently presented again at NNMC's emergency room on March 13, 2014, complaining of the same or similar symptoms.

15. During the March 13, 2014 visit, NNMC performed radiographic imaging which indicated the presence of a blood clot in the basal ganglia of Lydell Begay's head and neck area.

16. Some time after reviewing Lydell Begay's CT scan, NNMC arranged for Lydell Begay to be transferred to the University of New Mexico Hospital ("UNMH"). On information and belief, NNMC failed to immediately convey Lydell Begay's radiologic studies conducted at NNMC to UNMH.

17. On information and belief, following his admission to UNMH, Lydell Begay was diagnosed with left posterior cerebral artery, left posterior inferior cerebral artery, and left acute focal cerebral arteriopathy infraction, and there was an abnormal signal within the intradural left vertebral artery. The presumptive diagnosis was made at UNMH of left cervical vertebral artery dissection, and within the next 24 hours Lydell Begay had further propagation of his stroke, ultimately causing bilateral pontine infarcts leading to complete quadriparesis, the need for intubation and respiratory support, and the loss of speech.

18. When Dr. Marrocco treated Lydell Begay, she was not licensed to practice medicine in the State of New Mexico and instead was acting under restricted licenses issued by the States of Florida, New York, and Pennsylvania.

19. Dr. Marrocco's licenses in the States of Florida and New York were restricted as a result of her having violated Section 458.331(1)(m), (q) and (t) of Florida Statutes on or around March 25, 2011, for, among other things, committing medical malpractice when she failed to adequately assess and/or diagnose a patient and failed to appropriately treat same patient; failing

5

to consider alternatives to controlled substances; prescribing inappropriate and excessive quantities of controlled substances not in the course of her professional practice; failing to obtain lab results and diagnostic scans; and by failing to properly monitor and follow up on patient.

20. As an example of Dr. Marrocco's misconduct leading to licensing restrictions and sanctions, she prescribed 1,350 tablets of Oxycodone and 200 tablets of Oxycontin, both of which are powerful narcotic painkillers and controlled substances subject to widespread abuse, *to a single patient in a single day* in 2008 and, over the span of approximately one month in 2009, she prescribed 1,334 pills of oxycodone to the same patient.

21. Dr. Marrocco has also been censured and fined by the New York and Pennsylvania Medical Boards.

22. Dr. Marrocco's restriction on her medical license in New York allowed her to practice medicine only when monitored by a licensed physician, board certified in an appropriate specialty.

23. Upon information and belief, Dr. Marrocco was not monitored by a licensed physician board certified in emergency medicine when she cared for and treated Lydell Begay on March 6, 2014.

24. As an agency of Defendant United States of America, NNMC must follow policies and procedures issued by the IHS. NNMC violated the Indian Health Manual policy 3-1.4(c)(5) when it permitted Dr. Marrocco to treat patients at its facility, including Lydell Begay, even though she had engaged in serious misconduct/malpractice in the past and had a restricted medical license.

## **FIRST CAUSE OF ACTION: MEDICAL NEGLIGENCE**

25. Plaintiff incorporates herein all of the foregoing allegations as though set forth in their entirety.

26. In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant—including through the medical staff and personnel at NNMC—was under a duty to possess and apply the knowledge and to use the skill and care that is used by reasonably well-qualified healthcare providers in the same or similar circumstances.

27. Defendant—including through the medical staff and personnel at NNMC—breached its duty of care to Lydell Begay and was negligent in the management of Lydell Begay's health and safety. Defendant's negligence, errors, acts, and omissions include but are not limited to:

   a. Failing to properly diagnose Lydell Begay's condition and instead treating him for an eye infection;

   b. Failing to properly refer Lydell Begay to a neurologist and/or neurological services capable of treating such an illness;

   c. Failing to hospitalize and/or transfer Lydell Begay to a higher level of care in a timely and expeditious manner;

   d. Failing to perform and/or order diagnostic tests and/or provide treatment relevant to Lydell Begay's condition;

   e. Failing to timely diagnose and treat Lydell Begay; and

   f. Failing to convey the radiographic studies conducted on Lydell Begay on March 13, 2015 upon his transfer to UNMH.

28. By its operation of a medical center, Defendant held itself out to be a safe environment for diagnosis and treatment, and entered into an express and/or implied duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified physicians practicing under the same or similar circumstances.

29. Defendant breached its duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified health care providers practicing under the same or similar circumstances.

30. As a direct and foreseeable result of Defendant's negligent conduct, Plaintiff has suffered the injuries and damages described herein.

31. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has incurred, and continues to incur, medical and related expenses all in an amount not presently determinable but to be proven at the time of trial.

32. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has sustained a loss of wages and other benefits and will continue to suffer a loss of wages and other benefits in the future, and has lost the ability to provide domestic services to himself and his family, all in an amount not presently determinable but to be proven at the time of trial.

33. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered, and will continue to suffer, severe physical, mental, and emotional pain, suffering and anguish, all in an amount not presently determinable but to be proven at the time of trial.

34. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered a loss of the value of the enjoyment of life and will continue to suffer a loss

of the value of enjoyment of life in the future, all in an amount not presently determinable but to be proven at the time of trial.

35.     The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

## SECOND CAUSE OF ACTION:  NEGLIGENT SUPERVISION

36.     Plaintiff incorporates herein all of the foregoing allegations as though set forth in their entirety.

37.     In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant—by and through the NNMC administrators and/or NNMC medical staff management—had a duty to properly supervise and provide quality assurance for all health care personnel providing care and treatment for Lydell Begay when he presented to the emergency room at NNMC on March 6 and March 13, 2014.

38.     Defendant breached its duty of care with respect to Lydell Begay by failing to adequately supervise and provide quality assurance for its medical staff, including, but not limited to, nurses, physician assistants, nurse practitioners, and physicians, including Dr. Marrocco, in providing care and treatment for Lydell Begay.

39.     Defendant knew or should have known that failing to adequately supervise its medical staff—including staff with a past history of malpractice and licensing sanctions—would create an unreasonable risk of injury to patients being treated in its emergency room including Lydell Begay.

40. As a direct and foreseeable result of Defendant's failure to adequately or properly supervise hire, retain, train, instruct, provide quality assurance for, and supervise its medical staff, Plaintiff has suffered the injuries and damages described herein.

41. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has incurred, and continues to incur, medical and related expenses all in an amount not presently determinable but to be proven at the time of trial.

42. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has sustained a loss of wages and other benefits and will continue to suffer a loss of wages and other benefits in the future, and has lost the ability to provide domestic services to himself and his family, all in an amount not presently determinable but to be proven at the time of trial.

43. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered, and will continue to suffer, severe physical, mental, and emotional pain, suffering and anguish, all in an amount not presently determinable but to be proven at the time of trial.

44. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered a loss of the value of the enjoyment of life and will continue to suffer a loss of the value of enjoyment of life in the future, all in an amount not presently determinable but will be proven at the time of trial.

45. The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

## THIRD CAUSE OF ACTION: NEGLIGENT HIRING/CREDENTIALING

46. Plaintiff incorporates herein all of the foregoing allegations as though set forth in their entirety.

47. In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant—including by and through the NNMC administrators and/or NNMC medical staff management—had a duty to properly screen and properly issue credentials or hospital privileges to all health care personnel providing care and treatment for Lydell Begay when he presented to the emergency room at NNMC on March 6, 2014.

48. Defendant's improper hiring and/or credentialing of Dr. Marrocco, who was providing medical services to Lydell Begay while under a restricted medical license, was, *inter alia*, in violation of Indian Health Manual policy 3-1.4(c)(5), which prohibits the extension of credentialing and staff privileges to physicians with restricted licenses.

49. Defendant breached its duty of care owing Lydell Begay by improperly hiring/credentialing Dr. Marrocco and allowing her to exercise staff privileges at NNMC, and allowing her to do so without adequate supervision, which included her care and treatment of Lydell Begay on March 6, 2014.

50. Defendant knew or should have known that failing to adequately screen, select, credential, and supervise its medical staff would create an unreasonable risk of injury to patients being treated in its emergency room including Lydell Begay.

51. As a direct and foreseeable result of Defendant's negligent hiring/credentialing of Dr. Marrocco, Plaintiff has suffered the injuries and damages described herein.

52. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has incurred, and continues to incur, medical and related expenses all in an amount not presently determinable but to be proven at the time of trial.

53. As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff has sustained a loss of wages and other benefits and will continue to suffer a loss of wages and other benefits in the future, and has lost the ability to provide domestic services to himself and his family, all in an amount not presently determinable but to be proven at the time of trial.

54. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered, and will continue to suffer, severe physical, mental, and emotional pain, suffering and anguish, all in an amount not presently determinable but to be proven at the time of trial.

55. As a further direct and proximate result of Defendant's negligent conduct, Plaintiff has suffered a loss of the value of the enjoyment of life and will continue to suffer a loss of the value of enjoyment of life in the future, all in an amount not presently determinable but will be proven at the time of trial.

56. The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter final judgment in favor of Plaintiff and against Defendant in an amount to be proven at the time of trial for all of Plaintiff's damages

including, but not limited to compensatory damages past and future medical costs and related expenses; hedonic damages; as well as costs associated with bringing this cause of action; for reasonable attorney's fees as allowed by law; for pre-judgment interest and post-judgment interest; and for such other further relief as the Court deems just and proper.

Dated:  April 27, 2015               Respectfully submitted,

BRANCH LAW FIRM

By_____
Turner W. Branch
Margaret M. Branch
2025 Rio Grande Blvd., NW
Albuquerque, NM  87104
(505) 243-3500 - Telephone
(505) 243-3534 - Facsimile
twb@branchlawfirm.com
mmb@branchlawfirm.com

*and*

COHEN & ZEDALIS LLP
Seth T. Cohen
128 Grant Ave.
Santa Fe, New Mexico  87501
(505) 795-7699 - Telephone
(505) 395-7540 - Facsimile
scohen@candzlaw.com

***Attorneys for Plaintiff***

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
MARTIN BEGAY, as Conservator for and on behalf of LYDELL MARVIN BEGAY, his natural son,

**(b)** County of Residence of First Listed Plaintiff: San Juan County, New Mexico
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Branch Law Firm, Turner/W. Branch and Margaret M. Branch, 2025 Rio Grande Blvd., NW, Albuquerque, NM 87104, Telephone: (505) 243-3500; Facsimile: (505) 243-3456
Cohen & Zedalis, LLP, Seth T. Cohen, 128 Grant Avenue, Suite 101, Santa Fe, NM 87501
Telephone: (505) 795-7699

## DEFENDANTS
The United States of America

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☒ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sections 2671-2680
Brief description of cause:
Medical negligence and negligent supervision, hiring, and credentialing resulting in catastrophic injury.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
**DEMAND $** $25,000,000.00
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: April 27, 2015
SIGNATURE OF ATTORNEY OF RECORD: *[signature]* 4/28

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____