# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

LYDELL MARVIN BEGAY,
MARTIN ("MARTY") BEGAY, and
LOREN BEGAY,

       Plaintiffs,

vs.                                  No. CIV 15-0358 JB/SCY

UNITED STATES OF AMERICA,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Summary Judgment, and Memorandum in Support, filed October 16, 2015 (Doc. 24)("Motion"). The Court held a hearing on December 15, 2015. The primary issues are: (i) whether, under controlling law, physician Dr. Annicol Marrocco was an employee of the federal government or an employee of an independent contractor at the time she performed medical services that Plaintiffs Lydell Marvin Begay ("L. Begay") and his parents, Martin (Marty) Begay ("Mr. Begay") and Loren Begay ("Mrs. Begay")(collectively "the Begays") allege constituted medical negligence; and (ii) whether the Begays exhausted their administrative remedies with respect to the negligent supervision (Count II) and negligent hiring/credentialing (Count III) claims that they assert. The Court will grant in part and deny in part the Motion. First, the Court concludes that it lacks subject matter jurisdiction over Count I of the Complaint to the extent that it seeks relief for any acts of negligence of Dr. Marrocco on the grounds that Dr. Marrocco was an independent contractor, and not a United States employee. The Court will also deny the Begays' request that

the Court postpone ruling on the Motion until additional discovery is conducted with respect to Dr. Marrocco's employment status. Second, with respect to the Begays' allegation that other Northern Navajo Medical Center staff members committed medical negligence, the Court concludes that the Complaint complies with the pleading requirements that Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal"), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)("Twombly") set forth, and that amendment is therefore not required. Third, the Court concludes that Mr. and Mrs. Begay, but not L. Begay, have exhausted the administrative remedies for Count II and Count III with respect to the negligent supervision and hiring of other Northern Navajo Medical Center staff, nurses, and doctors in this case. It will allow them to amend the Complaint on Counts II and III to comply with the pleading requirements that Iqbal and Twombly set forth. Finally, at the December 15, 2015, hearing, the United States withdrew its argument about the insufficiency of exhaustion with respect to Dr. Marrocco for Counts II and III.

## FACTUAL BACKGROUND

In the body of its Motion, Defendant United States of America invokes rules 12(b)(1), 12(b)(6), and 56. To get as solid a factual basis as possible, the Court will cite only the undisputed material facts. For the most part, the material facts are largely undisputed.

"On March 6, 2014, Lydell Begay presented to the emergency room of Northern Navajo Medical Center ("NNMC")." Motion ¶ 1, at 2 (setting forth this fact). See Plaintiffs' Response to Defendant United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Summary Judgment; Rule 56(D) Affidavit at 3, filed November 16, 2015 (Doc. 39)("Response")(not disputing this fact). "Lydell Begay was seen by

physician Dr. Annicol Marrocco."  Motion ¶ 2, at 2 (setting forth this fact).  See Response at 3 (not disputing this fact).  "On March 6, 2014, Mr. Begay's initial Emergency Department Examination at NNMC was performed by a registered nurse who is identified both by initials and signature on the 'Emergency Primary RN' evaluation form."  Response at 5 (setting forth this fact).[1]  "That nurse failed to identify any neurological concerns."  Response at 5 (setting forth this fact).[2]  "On March 6, 2014, Mr. Begay was also examined at NNMC by Allen Jones, R.N., who also failed to note neurological concerns."  Response at 6 (setting forth this fact).[3] "Lydell Begay was seen again at NNMC on March 13, 2014."  Motion ¶ 3, at 2 (setting forth this fact).  See Response at 3 (not disputing this fact).  "Dr. Marrocco was not involved in his treatment or care on March 13, 2014."  Motion ¶ 3, at 2 (setting forth this fact).  See Response at 3 (not disputing this fact).  "A CT scan conducted on March 13, 2014, showed a blood clot in the basal ganglia of Lydell Begay's head and neck area."  Motion ¶ 4, at 2 (setting forth this fact). See Response at 3 (not disputing this fact).

"Lydell Begay was transferred to University of New Mexico Hospital (UNMH) on March 13, 2014."  Motion ¶ 5, at 2-3 (setting forth this fact).  See Response at 3 (not disputing this fact). "Following his admission to UNMH, Lydell Begay was diagnosed with left posterior cerebral artery, left posterior inferior cerebral artery, and left acute focal cerebral arteriopathy infraction, and there was an abnormal signal within the intradural left vertebral artery."  Motion ¶ 5, at 2-3

---

[1]Defendant United States of America does not dispute this fact in its Reply.  Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[2]Defendant United States of America does not dispute this fact in its Reply.  Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[3]Defendant United States of America does not dispute this fact in its Reply.  Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

(setting forth this fact).  <u>See</u> Response at 3 (not disputing this fact).  "The presumptive diagnosis was made at UNMH of left cervical vertebral artery dissection, leading to his complete quadriparesis, the need for intubation and respiratory support, and the loss of speech, also known as 'locked in' syndrome."  Motion ¶ 5, at 3 (setting forth this fact).  <u>See</u> Response at 3 (not disputing this fact).

"Dr. Annicol Marrocco was not an employee of the Department of Health and Human Services or the Northern Navajo Medical Center on March 6, 2014."  Motion ¶ 9, at 4 (setting forth this fact)(citing Declaration of Sue Ann Nichols, MMA, RN ¶ 5, at 1 (executed August 31, 2015), filed October 16, 2015 (Doc. 24-3)("Nichols Decl.").  <u>See</u> Response at 4 (not disputing this fact).[4]  "Dr. Annicol Marrocco worked as a contractor at Northern New Mexico Medical

_____

[4]Because the Begays do not "specifically controvert[]" this fact in their Response as the local rules require, it is deemed admitted.  D.N.M.LR-Civ. 56.1(b).  Moreover, the Begays "dispute that these allegations establish that Dr. Marrocco was an independent contractor at NNMC."  Response at 4.  They further explain:

> The opinion of Defendant's declarant, Sue Ann Nichols, that Dr. Marrocco was a "contractor" based solely on her Non-Personal Service Contract (the "Contract")([Contract at 1]) is an improper legal opinion under Fed. R. Evid. 701. The contract's designation of Dr. Marrocco as an independent contractor is not conclusive.
>
>     Moreover, Plaintiffs can neither admit nor deny Defendant's allegations that Dr. Marrocco was an independent contractor without completing discovery relating to Dr. Marrocco's employment status.  For example, even though Ms. Nichols identifies provisions of the Contract that, she contends, support Defendant's claim that Dr. Marrocco was an independent contractor, she does not state any facts establishing that Dr. Marrocco and/or Defendant complied with those provisions and acted accordingly.  Plaintiffs are entitled to conduct discovery on these issues.  <u>See</u> [Declaration of Seth T. Cohen Pursuant to Fed. R. Civ. P. 56(d) ¶¶ 5-6 (executed November 16, 2015), filed November 16, 2015 (Doc. 39-1)("Cohen Decl.")].
>
>     Lastly, Plaintiffs do not dispute the allegations to the extent they quote the

Center from January 1, 2014 to December 31, 2014, pursuant to a contract between NNMC and

Medicus Healthcare Solutions, LLC."  Motion ¶ 10, at 4 (setting forth this fact).  See Nichols

Decl. ¶ 3, at 1; Solicitation/Contract/Order for Commercial Items at 6, filed October 16, 2015

(Doc. 24-3)("Contract").[5]  "Medicus Healthcare Solutions, LLC provided the services of Dr.

Marrocco pursuant to the contract."  Motion ¶ 11, at 4 (setting forth this fact).  See Response at 4

(not disputing this fact).  "The contract was a 'non-personal service contract.'"  Motion ¶ 12, at 4

(setting forth this fact); Response at 4 (not disputing this fact).[6]  "Dr. Annicol Marrocco was not

designated as an employee of the Federal Government for purpose of the Federal Tort Claims

Act."  Motion ¶ 13, at 4 (setting forth this fact).  See Response at 4 (not disputing this fact).[7]

"The contract provided for the provision of Emergency Room Physician service for the ER

---

provisions of the Non-Personal Service Contract.

Response at 4.  The Court will make the legal determination whether Dr. Marrocco was an independent contractor in its analysis, if necessary.

[5]The Begays purport to dispute this fact, contending:

The opinion of Defendant's declarant, Sue Ann Nichols, that Dr. Marrocco was a "contractor" based solely on her Non-Personal Service Contract (the "Contract")([Contract at 1]) is an improper legal opinion under Fed. R. Evid. 701. The contract's designation of Dr. Marrocco as an independent contractor is not conclusive.

Response at 4.  In finding it undisputed that "Dr. Annicol Marrocco worked as a contractor at Northern New Mexico Medical Center from January 1, 2014 to December 31, 2014, pursuant to a contract between Northern Navajo Medical Center and Medicus Healthcare Solutions, LLC" the Court uses the word "contractor" in its ordinary common-sense meaning.  The Court will make the legal determination whether Dr. Marrocco is an independent contractor in its analysis, if necessary.

[6]The Court incorporates its analysis from footnote 4, supra.

[7]The Court incorporates its analysis from footnote 4, supra.

Department at Northern Navajo Medical Center on an 'as needed' basis."  Motion ¶ 14, at 4 (setting forth this fact).  See Response at 4 (not disputing this fact).[8]  "The contract specifically stated that the Government did not guarantee that the contractor would work the number of hours ordered and was clear it would pay the contractor only the actual hours the contractor worked."  Motion ¶ 15, at 4 (setting forth this fact).  See Response at 4 (not disputing this fact).[9]  "The contractor submitted invoices to NNMC for payment for services and was paid for those services."  Motion ¶ 16, at 5 (setting forth this fact).  See Response at 4 (not disputing this fact).[10]  "The contractor was responsible for paying for necessary travel, per diem, housing, and applicable taxes."  Motion ¶ 17, at 5 (setting forth this fact).  See Response at 4 (not disputing this fact).[11]  "The Government declined to provide health benefits, paid leave, thrift savings plan, educational benefits, housing, meals, or transportation to and from the job site."  Motion ¶ 18, at 5 (setting forth this fact).  See Response at 4 (not disputing this fact).[12]  "The Government reserved the right to cancel the contract when it was in the Government's best interest."  Motion ¶ 19, at 5 (setting forth this fact).  See Response at 4 (not disputing this fact).[13]  Under the contract, "[t]he Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by

---

[8]The Court incorporates its analysis from footnote 4, supra.

[9]The Court incorporates its analysis from footnote 4, supra.

[10]The Court incorporates its analysis from footnote 4, supra.

[11]The Court incorporates its analysis from footnote 4, supra.

[12]The Court incorporates its analysis from footnote 4, supra.

[13]The Court incorporates its analysis from footnote 4, supra.

example, the Contractors professional medical judgment, diagnosis, or specific medical treatments." Contract at 6.[14]

"The contractor agreed to be 'solely liable for and expressly agrees to indemnify the Government with respect to any liability producing acts or omissions by it or its employees or agents,' including Dr. Marrocco." Motion ¶ 21, at 5 (setting forth this fact). See Contract at 6; Response at 5 (not disputing this fact).[15] "The Contract specified the parties' express agreement

---

[14]Defendant United States of America asks the Court to find undisputed that "Dr. Marrocco was not directly supervised by any employee of NNMC, and, by the express terms of the Contract, NNMC retained 'no control over professional aspects of services rendered, including by example, the Contractor's professional medical judgment, diagnosis or specific medical treatments.'" Motion ¶ 20, at 5 (citing Contract at 8). In Response, the Begays state:

> Plaintiffs dispute that Defendant established that "Dr. Marrocco was not directly supervised by any employee of NNMC." This is no more than a statement of counsel, which cites only to the Contract. The cited provision makes no mention of supervision, but does state that the "Government may evaluate the quality of professional and administrative services provided." *See* [Contract at 1]. The Contract states that Defendant has "no control over professional aspects of the services rendered," but that leaves open the possibility of other areas of control. *Id.*

Response at 4-5. The Court agrees with the Begays that the contract does not state that "Dr. Marrocco was not directly supervised by any employee of NNMC" and the United States does not cite to any other evidence in support of this proposition. Accordingly, the Court concludes that this fact is disputed. The parties agree, however, that the contract states that Northern Navajo Medical Center retained "no control over professional aspects of services rendered, including by example, the Contractor's professional medical judgment, diagnosis or specific medical treatments." In its Response, the Begays also state that the contract provides that the "Government may evaluate the quality of professional and administrative services provided." The United States does not dispute this fact in its Reply. The Court therefore finds it undisputed that, under the contract, "[t]he Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by example, the Contractors professional medical judgment, diagnosis, or specific medical treatments." Contract at 8.

[15]The local rules regarding summary judgment require the responding party to "specifically controvert[]" the fact or else the fact is admitted. D.N.M.LR-Civ. 56.1(b).

- 7 -

that 'the professional services rendered by the Contractor are rendered in its capacity as an independent contractor.'"  Motion ¶ 22, at 5 (setting forth this fact).  See Contract at 6 ("It is expressly agreed and understood that this is a nonpersonal services contract . . . under which the professional services rendered by the Contractor are rendered in its capacity as an independent contractor."); Response at 5 (not disputing this fact).[16]  "Medicus Healthcare Solutions, LLC purchased medical malpractice insurance covering Dr. Marrocco, which was in effect at all relevant times."  Motion ¶ 23, at 5 (setting forth this fact).  See Response at 5 (not disputing this fact).[17]

---

Addressing this fact in their Response, the Begays state: "Plaintiffs do not dispute the allegations to the extent they quote the Contract.  However, Plaintiffs dispute the allegations to the extent they seek to establish Dr. Marrocco's employment status as an independent contractor.  Discovery is needed on this issue.  See Cohen Decl., ¶¶ 5-6."  Response at 5.  The Begays' Response does not "specifically controvert" that "[t]he contractor agreed to be 'solely liable for and expressly agrees to indemnify the Government with respect to any liability producing acts or omissions by it or its employees or agents,' including Dr. Marrocco."  Instead, the Begays make an argument with respect to this fact's legal effect.  If necessary, the Court will determine whether the undisputed facts establish that Dr. Marrocco was an independent contractor in its analysis.

[16]With respect to this fact, the Begays assert: "Plaintiffs do not dispute the allegations to the extent they quote the Contract.  However, Plaintiffs dispute the allegations to the extent they seek to establish Dr. Marrocco's employment status as an independent contractor.  Discovery is needed on this issue.  See Cohen Decl., ¶¶ 5-6."  Response at 5.  The Begays' Response does not "specifically controvert" that "[t]he Contract specified the parties' express agreement that 'the professional services rendered by the Contractor are rendered in its capacity as an independent contractor.'"  Rather, they contend that this contractual language does not establish Dr. Marrocco's employment status as an independent contractor.  If necessary, the Court will determine whether the undisputed facts establish that Dr. Marrocco was an independent contractor in its analysis.

[17]With respect to this fact, the Begays assert: "Plaintiffs do not dispute the allegations but contend they do not support Defendant's motion.  That Plaintiffs have filed lawsuits against third parties, including Dr. Marrocco, is immaterial to this motion."  Response at 5.  The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact, or else the fact is admitted.  D.N.M.LR-Civ. 56.1(b).  Because the Begays'

"On May 19, 2014, Marty Begay, Father, Parent, and next of Friend of Lydell Marvin Begay, an Incapacitated Person, filed an administrative tort claim for injuries to Lydell Marvin Begay allegedly caused by the medical negligence of Dr. Annicol Marrocco and the Northern Navajo Medical Center (NNMC)."  Motion ¶ 6, at 3 (setting forth this fact).  See Response at 3-4 (not disputing this fact).[18]  The claim under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, 2680 ("FTCA"), states that "[t]he failure to diagnos[e] Lydell Begay properly rendered the doctors and supporting personnel of [Indian Health Services ("IHS")] totally incapable of treating him properly."  Response at 6 (setting forth this fact).[19]

_____

statement does not "specifically controvert" the United States' assertion, the Court deems this fact admitted.  If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[18]With respect to this fact, the Begays assert in their Response:

> Undisputed that Plaintiff submitted an FTCA claim on May 19, 2014 for injuries to Mr. Begay caused by the medical negligence of Dr. Marrocco and NNMC, and that the claim was denied on January 22, 2015.  These allegations do not support Defendant's motion, however, in that they fail to acknowledge that on October 24 and 29, 2014, Plaintiff submitted amendments/supplements to that notice identifying facts supporting claims for negligent hiring, supervision, and credentialing.

Response at 3-4 (citing Letter from Turner W. Branch to Dorothea P. Koehler at 5 (dated October 24, 2014), filed November 16, 2015 (Doc. 39-1)("Oct. 24th Letter"); Letter from Turner W. Branch to Dorothea P. Koehler at 7 (dated October 29, 2014), filed November 16, 2015 (Doc. 39-1)("Oct. 29th Letter")).  The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact or else the fact is admitted.  D.N.M.LR-Civ. 56.1(b).  Because the Begays' statement does not "specifically controvert" the United States' assertion that, "[o]n May 19, 2014, Marty Begay, Father, Parent, and next of Friend of Lydell Marvin Begay, an Incapacitated Person, filed an administrative tort claim for injuries to Lydell Marvin Begay allegedly caused by the medical negligence of Dr. Annicol Marrocco and the Northern Navajo Medical Center (NNMC)," the Court deems this fact admitted.  If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[19]Defendant United States of America does not dispute this fact in its Reply.

On June 9, 2014, the [United States Department of Health and Human Services ("DHHS")] formally acknowledged receipt of Plaintiff's FTCA claim, assigned it a claim number of 2014-0426, and requested, by letter to Plaintiff's counsel, medical records, medical bills, and "[a]ny other evidence or information which may have a bearing on either the responsibility of the United States for the personal injury or the damages claimed."

Response at 6 (setting forth this fact).[20]

In letter dated June 17, 2014 ([Letter (dated June 17, 2014), filed November 16, 2015 (Doc. 39-1)("June 17th Letter")]), Plaintiff's counsel informed the DHHS that Plaintiff would provide the requested documentation over the next several months, and on October 24, 2014, Plaintiff amended his original FTCA claim by submitting supplemental correspondence and documents to the pending tort claim number 2014-0426, advising the DHHS that, among other things, the medical boards of Florida, New York, and Pennsylvania had disciplined Dr. Marrocco for serious misconduct.

Response at 6 (setting forth this fact).[21]   "On October 29, 2014, Plaintiff again amended his

FTCA claim by submitting supplemental materials for the pending tort claim, number 2014-

0426, advising the DHHS of additional detail regarding Dr. Marrocco's past misconduct and

purported violation of IHS policy."  Response at 6 (setting forth this fact).[22]

In particular, the October 29, 2014 letter stated that by "employ[ing] or contract[ing] Annicol Marrocco, M.D.," the IHS had "violated IHS Policy 3-1.4(C)(5)" insofar as that policy provides, *inter alia*, that "[i]n general, providers **with any restrictions on any State license . . . will not be granted medical staff membership or clinical privileges**."

---

Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[20]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[21]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[22]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

Response at 6-7 (emphasis in Response).[23]

> The claim was denied on January 22, 2015 on the grounds that there was no negligence on the part of the NNMC and on the grounds that the evidence failed to establish that the alleged injuries were caused by the negligent, wrongful act or omission of a federal employee acting within the scope of employment.

Motion ¶ 7, at 3 (setting forth this fact).  See Response at 3-4 (not disputing this fact); id. at 7 ("On January 22, 2015, the DHHS denied Plaintiff's FTCA claim No. 2014-0426.").[24]  "The United States has sent no further correspondence regarding Plaintiff's FTCA claim or the amendments thereto."  Response at 7 (setting forth this fact).[25]  "Beginning in February 2015,

---

[23]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[24]With respect to this fact, the Begays assert in their Response:

> Undisputed that Plaintiff submitted an FTCA claim on May 19, 2014 for injuries to Mr. Begay caused by the medical negligence of Dr. Marrocco and NNMC, and that the claim was denied on January 22, 2015.  These allegations do not support Defendant's motion, however, in that they fail to acknowledge that on October 24 and 29, 2014, Plaintiff submitted amendments/supplements to that notice identifying facts supporting claims for negligent hiring, supervision, and credentialing.

Response at 3-4 (citing Oct. 24th Letter and Oct. 29th Letter).  The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact, or else the fact is admitted.  D.N.M.LR-Civ. 56.1(b).  Because the Begay's statement does not "specifically controvert" the United States' assertion that

> [t]he claim was denied on January 22, 2015 on the grounds that there was no negligence on the part of the NNMC and on the grounds that the evidence failed to establish that the alleged injuries were caused by the negligent, wrongful act or omission of a federal employee acting within the scope of employment,

the Court deems this fact admitted.  If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[25]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

Plaintiffs' counsel requested information from the IHS under the Freedom of Information Act ('FOIA') seeking, among other things, Dr. Marrocco's personnel records, credentialing files, and employment contract(s)."  Response at 7 (setting forth this fact).[26]

> Even though the IHS acknowledged receipt of the FOIA requests and initially indicated that the requested records would be produced, the IHS later took the position that Dr. Marrocco's credentialing files were privileged and has not, as of the date of [November 16, 2015], produced *any* of the requested records, even those that the IHS never claimed were governed by any privilege or regulation.

Response at 7 (setting forth this fact).[27]

"Plaintiff has already filed suit in this court against Medicus, alleging negligence, breach of contract and violations of the New Mexico Unfair Practices Act in *Begay v. Medicus Healthcare Solutions, LLC*, 15-CV-500 JH/SYC."  Motion ¶ 24, at 6 (setting forth this fact).  See Response at 5 (not disputing this fact).[28]  "In his suit, he alleges that Medicus Healthcare Solutions, LLC is 'a registered government contractor providing 'locum tenens'[[29]] (temporary,

---

[26]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[27]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[28]With respect to this fact, the Begays assert: "Plaintiffs do not dispute the allegations but contend they do not support Defendant's motion.  That Plaintiffs have filed lawsuits against third parties, including Dr. Marrocco, is immaterial to this motion."  Response at 5.  The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact or else the fact is admitted.  D.N.M.LR-Civ. 56.1(b).  Because the Begays' statement does not "specifically controvert" the United States' assertion, the Court deems this fact admitted.  If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[29]"Locum tenens" is defined as "one filling an office for a time or temporarily taking the place of another -- used especially of a doctor or clergyman."  Locum tenens, Merriam-Webster Online Dictionary (2015), http://www.merriam-webster.com/dictionary/locum%20tenens.

fill-in) physicians and transition staffing for, among other federal facilities, the Indian Health Services, which oversees and manages NNMC.'" Motion ¶ 24, at 6 (setting forth this fact). <u>See</u> Response at 5 (not disputing this fact).[30] "Plaintiff has filed suit in State court against Dr. Annicol Marrocco in *Begay et. al., v. Annicol Marrocco, M.D.*, D-116-CV-2015-00850 (11th Jud. Dist.)(July 16, 2015)." Motion ¶ 25, at 6 (setting forth this fact). <u>See</u> Response at 5 (not disputing this fact).[31]

"On March 9, 2015, Plaintiffs Marty (Marvin) Begay and Lorene Begay submitted FTCA claims to the IHS." Response at 7 (setting forth this fact).[32]

> In their FTCA notices, Plaintiffs Marty ("Marvin") Begay and Lorene Begay noticed the United States that they intend "to bring an action against the Indian Health Services for loss of parental services, society and consortium as a result of the Indian Health Services' negligence including, but not limited to, medical negligence, negligent authorization, *negligent supervision*, *negligent hiring*, and

---

[30]With respect to this fact, the Begays assert: "Plaintiffs do not dispute the allegations but contend they do not support Defendant's motion. That Plaintiffs have filed lawsuits against third parties, including Dr. Marrocco, is immaterial to this motion." Response at 5. The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact or else the fact is admitted. D.N.M.LR-Civ. 56.1(b). Because the Begays' statement does not "specifically controvert" the United States' assertion, the Court deems this fact admitted. If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[31]With respect to this fact, the Begays assert: "Plaintiffs do not dispute the allegations but contend they do not support Defendant's motion. That Plaintiffs have filed lawsuits against third parties, including Dr. Marrocco, is immaterial to this motion." Response at 5. The local rules regarding summary judgment, however, require the responding party to "specifically controvert[]" the fact or else the fact is admitted. D.N.M.LR-Civ. 56.1(b). Because the Begays' statement does not "specifically controvert" the United States' assertion, the Court deems this fact admitted. If necessary, the Court will determine whether this fact is material to the Motion in its analysis.

[32]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

retention, and *negligent credentialing*/authorization of staff privileges . . . ," and that their son, Lydell Begay, "was not adequately examined *by physicians and staff at NNMC* but instead was told to go home and rest, take aspirin, use eye drops, and report back if he was not feeling better."

Response at 7-8 (setting forth this fact)(emphasis in Response).[33]  "In a letter dated March 26, 2015, the DHHS formally acknowledged receipt of the FTCA notices submitted by Plaintiffs Marty and Lorene Begay, and assigned them tort claim number 2015-0264 and 2014-0265, respectively."  Response at 8 (setting forth this fact).[34]

"On April 30, 2015, in response to the DHHS's March 26, 2015 request for information supporting their claims, Plaintiffs Martin ('Marty') Begay and Lorene Begay submitted additional materials to the DHHS, including medical records and documents reflecting Dr. Marrocco's prior misconduct."  Response at 8 (setting forth this fact).[35]  "It has been more than six months since Plaintiffs Marty and Lorene Begay submitted their respective FTCA notices; thus, under 28 U.S.C. § 2675(a), they are deemed denied."  Response at 8 (setting forth this fact).[36]  "On October 27, 2015, Plaintiff Lydell Begay re-noticed his FTCA claim and stated that he is 'intending to bring an action against the Indian Health Services as a result of the Indian Health Services' *negligent credentialing, hiring, training, staffing, supervision, and retention of*

---

[33]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[34]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[35]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[36]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

*physicians, nurses, health care providers* including, but not limited to, Annicol Marrocco, M.D., who provided Lydell medical care and treatment on March 6 and 13, 2014 at NNMC.'" Response at 8 (setting forth this fact)(emphasis in Response).[37]

> The October 27, 2015 FTCA claim notice also stated that "[t]he physicians *and staff* at NNMC did not provide required medical treatment to Lydell with respect to the blood clot or conduct additional testing or diagnostic procedures," and that "Dr. Marrocco had a history of serious misconduct as a physician and had been sanctioned by licensing/regulatory authorities before she was credentialed by NNMC to treat Lydell Begay."

Response at 8-9 (setting forth this fact).[38]  "The DHHS has until April 27, 2016 to act o[n] Plaintiff Lydell Begay's October 27, 2015 FTCA claim notice."  Response at 9 (setting forth this fact)(citing 28 U.S.C. § 2675(a)).[39]

## PROCEDURAL BACKGROUND

This case is a medical malpractice action that L. Begay and his parents, Mr. Begay and Mrs. Begay have brought pursuant to the FTCA.  The Begays are suing the United States for injuries that they allegedly received as a result of medical care that the Northern Navajo Medical Center provided in March, 2014.  On April 28, 2015, L. Begay filed his first Complaint.  See Complaint for Damages, filed April 28, 2015 (Doc. 1)("Original Complaint").  The Begays filed their Amended Complaint on October 30, 2015.  First Amended Complaint for Damages, filed

---

[37]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[38]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

[39]Defendant United States of America does not dispute this fact in its Reply. Accordingly, pursuant to D.N.M.LR-Civ. 56.1(b), the Court deems this fact undisputed.

October 30, 2015 (Doc. 32)("Complaint").[40]   In their Amended Complaint, the Begays contend that

> [NNMC]'s poor care ultimately caused Lydell Begay severe and permanent disabilities: paralysis of the arms and legs, the loss of the ability to speak, and brain damage -- an overall condition known as "locked-in syndrome," meaning Lydell Begay is, for the most part, permanently imprisoned in his own body, unable to interact with the world around him.

Complaint at 1.  The Begays assert four causes of action against the United States, which they contend through its DHHS, has direct oversight of IHS, a federal agency that provides health care services to members of the Navajo Nation: (i) medical negligence, see Complaint ¶¶ 28-39, at 7-10; (ii) negligent supervision, see Complaint ¶¶ 40-50, at 10-12; (iii) negligent hiring/credentialing, see Complaint ¶¶ 51-62, at 12-14; and (iv) loss of consortium/society,[41] see Complaint ¶¶ 63-69, at 14.

### 1.    The Motion.

The United States moves to dismiss the Amended Complaint pursuant to rule 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and/or failure to state a claim.  See Motion at 1-2.  In the alternative, the United States moves for summary judgment under rule 56.  See Motion at 6.  The United States indicates that the Court lacks subject-matter jurisdiction over the

---

[40]The United States filed the Motion on October 16, 2015 against the Original Complaint. See Motion at 1; Original Complaint at 1.  The Court will cite, however, to the Amended Complaint, which the Begays filed on October 30, 2015, after the United States filed the Motion. See Complaint at 1; Motion at 1.  The Court will refer to the Amended Complaint as "the Complaint" throughout this Memorandum Opinion and Order.  The only difference between the Original Complaint and the Amended Complaint is that the Complaint adds Martin (Marty) Begay and Lorene Begay as Plaintiffs.  See Original Complaint at 1; Complaint at 1.  In Amended Complaint also adds a loss of consortium claim on behalf of Mr. and Mrs. Begay.  See Complaint ¶¶ 63-69, at 14.

[41]The loss of consortium claim is asserted on behalf of Mr. and Mrs. Begay.  See Response at 8 (setting forth this fact); Reply (not disputing this fact).

Begays' Complaint to the extent that it seeks relief for any of Dr. Marrocco's purported acts of negligence on the grounds that Dr. Marrocco was not a United States employee and is not deemed an employee for the FTCA's purposes.  See Motion at 1.  The United States contends that there is no waiver of sovereign immunity by the United States for an alleged act of independent contractors and that the United States has not waived immunity from suit for any claims arising from Dr. Marrocco's negligent acts.  See Motion at 1.  In addition, the United States argues that the Begays have not exhausted their claims of alleged negligent supervision or hiring/credentialing.  See Complaint at 1.  The United States maintains that "[t]hose portions of the complaint and those causes of action based on alleged acts or omissions of Dr. Marrocco, or the negligent supervision or hiring/credentialing of any NNMC providers should be dismissed for lack of subject matter jurisdiction."  Complaint at 1-2.

On point one, the United States asserts that the FTCA provides a limited waiver of sovereign immunity, but that it does not apply to actions arising out of independent contractors' tortious conduct.  See Motion at 7.  According to the United States, the FTCA provides that the United States can be sued for personal injury resulting from any employee of the United States' negligent or wrongful act or omission, excluding any contractor with the United States.  See Complaint at 7-8.  The United States asserts that the Court must consider seven factors in determining whether an individual is an employee under the FTCA:

> (1) the intent of the parties; (2) whether the United States controls only the end result or may also control the manner and method of reaching the result; (3) whether the person uses her own equipment or that of the United States; (4) who provides liability insurance; (5) who pays social security tax; (6) whether federal regulations prohibit federal employees from performing such contracts; and (7) whether the individual has authority to subcontract to others.

Motion at 8 (quoting Woodruff v. Covington, 389 F.3d 1117, 1126 (10th Cir. 2004)).   The

United States also argues that, with respect to physicians, the United States Court of Appeals for

the Tenth Circuit recognizes that "a physician must exercise his own professional judgment, no

one controls the detailed physical performance of his duties."   Motion at 8 (quoting Woodruff v.

Covington, 389 F.3d at 1127).   The United States contends that, "[w]here there is a contract

between the government and the physician, clear language regarding government control or

'federal employee' status can often prevail over facts that might otherwise support a finding of

'day-to-day control.'"   Motion at 8-9 (quoting Woodruff v. Covington, 389 F.3d at 1127).

The United States then argues that examining the seven factors in this case leads to the

conclusion that Dr. Marrocco was not an employee of Northern Navajo Medical Center:

> Dr. Marrocco was working pursuant to a non-personal services contract between
> NNMC and Medicus Healthcare Solutions, LLC. . . . "Non personal service
> contracts" are contracts under which the personnel rendering the services are not
> subject, either by contract terms or through performance, to the supervision and
> control usually prevailing in relationships between the government and its
> employees.   48 CFR 37.101.   They are contracts under which the Contractor is
> designated an independent contractor.   Horn v. United States, 98 Ct. Cl. 500, 502,
> n.3 (Ct. Cl. 2011).   The contract between NNMC and Medicus Healthcare
> Solutions, LLC demonstrates the express intent of the parties that "the
> professional services rendered by the Contractor are rendered in its capacity as an
> independent contractor." . . .   The contract also demonstrated Medicus' intent to
> be "solely liable for and expressly agrees to indemnify the Government with
> respect to any liability producing acts or omissions by it or its employees or
> agents," including Dr. Marrocco. . . .
>
> Other terms of the contract further support its characterization as a non-personal
> services contract.   The contract provided for the "provision of Emergency Room
> Physician for the ER Department at Northern Navajo Medical Center" on an "as
> needed" basis. . . .   Further, the Government specifically stated that it did not
> guarantee that the contractor would work the number of hours ordered and was
> clear it would pay the contractor only the actual hours the contractor worked. . . .
> The contractor submitted invoices to NNMC for payment for services and was
> paid for those services. . . .   Medicus was responsible for paying for necessary
> travel, per diem, housing, and applicable taxes. . . .   The Government declined to

provide health benefits, paid leave, thrift savings plan, educational funds, housing, meals, or transportation to and from the job site. . . . The Government also reserved the right to cancel the contract when it was in the Government's best interest. . . .  Medicus carried its own professional liability insurance that covered Dr. Marrocco. . . .

. . . .

Further, Dr. Marrocco was not supervised or controlled by any employee of NNMC. . . . And, holding a physician subject to hospital quality control regulations, recordkeeping regulations and requirements, a dress code, and office hours, is also insufficient to overcome clear language regarding government control of medical providers.  *See Duplan v. Harper*, 188 F.3d 1195, 1200 (10th Cir. 1999).  As this Court stated in *Waconda*, merely "being subject to [a] hospital's rules as a condition of staff privileges does not remotely make a private physician an employee of that hospital." *Waconda v. United States*, 06cv101 (JB/ACT)(Memorandum Opinion and Order, filed May 23, 2007, p. 21)(Citing *Lilly v. Fieldstone*, 876 F.2d [857,] 860 [(10th Cir. 1989)](emphasis in original). This is because physicians are in a unique position in that they "must have discretion to care for a patient and may not surrender control over certain medical details." *Tsosie v. United States*, 452 F.3d [1161,] 1163 [(10th Cir. 2006)]; *see also Lilly*, 876 F.2d at 859 (the "control test" is subject to a doctor's medical and ethical obligations.).  Therefore, the second fact also weighs in favor of finding Dr. Marrocco was an independent contractor.

Motion at 9-11.

The United States argues that, to the extent that the third factor -- use of Northern Navajo Medical Center's equipment -- weighs in favor of an employee relationship, the Court should dismiss it as unimportant in the modern medical context.  See Motion at 11.  The United States maintains that physicians no longer own black bags of instruments, and that the use and interpretation of any medical equipment remains in the physician's control.  See Motion at 11. With respect to the fourth, fifth, sixth, and seventh factors, the United States contends that, by the contract's terms, Medicus Healthcare was responsible for providing medical liability insurance and provided that insurance.  See Motion at 11.  The United States concludes that the contract between Northern Navajo Medical Center and Medicus Healthcare shows the parties'

intent to establish an independent contractor relationship for which the United States has not waived immunity under the FTCA.  See Motion at 11.  The United States next asserts that Dr. Marrocco was not deemed an employee under 25 U.S.C. § 1680c(e).  See Motion at 12.  The United States argues that, under 25 U.S.C. § 1680c(e), the FTCA may be extended to "non-Service health care practitioners," but not under the circumstances present here.  Motion at 12.  The United States maintains that Dr. Marrocco could be deemed an employee for FTCA purposes under 25 U.S.C. § 1680c(e) only "if expressly set forth in her contract or in the privileges extended her by NNMC, neither of which occurred here."  Motion at 12.  The United States therefore insists that the FTCA does not extend to include Dr. Marrocco as a deemed "non-Service health care practitioner."  Motion at 12.  Accordingly, the United States asks the Court to dismiss Count I for lack of subject-matter jurisdiction.  See Motion at 13.

The United States' second argument is that the Begays have not exhausted their administrative remedies for negligent supervision (Count II) or negligent hiring/credentialing (Count III).  See Motion at 13.  The United States contends that a plaintiff who sues under the FTCA must comply with the statute's notice requirements, which are jurisdictional, cannot be waived, and must be strictly construed.  See Motion at 13 (citing Trentadue v. United States, 397 F.3d 840, 852 (10th Cir. 2005)).  The United States argues that "no allegation is included in Plaintiff's tort claim notice indicating that Dr. Marrocco, or any NNMC provider, was negligently supervised, hired, or credentialed."  Motion at 13.  According to the United States, L. Begay's administrative claim revolves completely around the details of the purported negligent diagnosis and treatment of L. Begay while he was a patient at Northern Navajo Medical Center.  See Motion at 13.  The negligent supervision or credentialing claim, the United States insists,

- 20 -

"would necessarily focus on NNMC's alleged negligence in allowing providers to maintain privileges at the hospital and its alleged failure to adequately investigate and monitor providers' competency and ability."  Motion at 13-14 (citing Bethel v. U.S., ex re. Veterans Admin. Med. Ctr. Of Denver, Colorado, 495 F. Supp. 21 1121, 1125 (D. Colo. 2007)(Figa, J.)).  The United States further explains:

> A plaintiff cannot simply allege that they have suffered an injury in an Administrative Claim and then later fashion new theories as to how that injury occurred or who is responsible for that injury.  Case law is clear that the presentation requirements are jurisdictional and cannot be waived, and a claim for negligent supervision or hiring/credentialing cannot simply be read into an administrative claim addressing medical negligence.  In *Bethel*, the Court rejected the plaintiff's argument that the negligence in credentialing and monitoring constituted "ongoing negligence, which culminated in [plaintiff's] catastrophic injury," holding instead that the cause of action for negligent credentialing was not exhausted since it was "obviously distinct and different" from the treatment-based causes of action for which a proper administrative claim was submitted.  *Id. See also Kikumura v. Osagie*, 461 F.3d 1269, 1302 (10th Cir. 2006) (finding failure to exhaust with respect to FTCA claim for "negligent failure to provide adequate training and supervision to staff" because administrative claim alleged facts relating only to negligent care while ill); *Staggs v. United States*, 425 F.3d 881, 884-85 (10th Cir. 2005)(finding failure to exhaust FTCA claim for lack of informed consent because administrative claim alleged only a substantial departure from the standard of care and no facts specific to negligent management of plaintiff's pregnancy and labor). Neither can Plaintiff in this case pursue a claim for negligent supervision or hiring/credentialing of any of NNMC's employees or independent contractors, without having made mention of such claims in his SF-95.[42]

> Plaintiff's claims for negligent supervision or hiring/credentialing were not administratively exhausted, and the Court should dismiss Counts II and III in their entirety for lack of jurisdiction.

Motion at 14-15.

---

[42]A claim against the United States may be filed by the injured person or his or her legal representative using Standard Form 95 ("SF-95"), Claim for Damage, Injury, or Death.

2.      **The Begays' Response.**

The Begays responded to the Motion on November 16, 2015.  See Response at 1.  The Begays first argue that the Court has jurisdiction over Count I, because federal employees are alleged to have committed malpractice.  See Response at 9.  First, they assert that, even assuming that Dr. Marrocco was an independent contractor, "the Complaint plainly alleges malpractice on behalf of the 'medical staff of NNMC's emergency room,' *not just Dr. Marrocco*."  Response at 9 (emphasis in Response).  According to the Begays, medical records indicate that other Northern Navajo Medical Center staff members were involved in L. Begay's medical treatment and that the Court should therefore deny the Motion.  See Response at 9.  They insist that the Complaint specifically alleges medical malpractice by "the medical staff" at Northern Navajo Medical Center and that this allegation appears throughout the Complaint where medical negligence is addressed.  Response at 9-10.  The Begays contend that Count I is not limited to Dr. Marrocco's actions, and that the United States overlooks or ignores these allegations.  See Response at 9-10.  They assert that the medical records indicate that at least two other medical staff members, other than Dr. Marrocco, examined L. Begay on March 6, 2014: (i) Allen Jones, R.N., saw L. Begay in triage at approximately 5:30 p.m.; and (ii) a registered nurse, whose signature is illegible, examined L. Begay at 9:45 p.m., before Dr. Marrocco's examination.  See Response at 10-11.  They further assert that L. Begay's claim for medical negligence on March 6, 2014 is not limited to the nursing staff.  See Response at 11.  The Begays explain:

> Plaintiffs have yet been able to discover facts about the chain-of-command and supervision over the Emergency Department on March 6, 2014.  Nor have Plaintiffs been able to determine whether other providers, not reflected in the records, were involved in Mr. Begay's care on that day.  Finally, Count I encompasses negligent conduct on March 13, 2014, a day on which Dr. Marrocco

was not working at NNMC.  *See, e.g.*, Complaint, ¶¶ 6 (asserting claim for negligent failure to transmit key diagnostic information); Defendant's Fact No. 3.

On the basis of these allegations and facts, Defendant's motion must be denied as to Count I.  Plaintiffs have adequately alleged in the Complaint that multiple medical staff members at NNMC committed malpractice.  Further, even with little to no discovery, Plaintiffs have set forth factual support for those allegations.

Response at 11.

With respect to Dr. Marrocco, the Begays contend that they should be entitled to adequate discovery to assess Dr. Marrocco's employment status.  See Response at 11-12.  They assert that the determination of whether a physician is an independent contractor under the FTCA is a fact-intensive one.  See Response at 12.  The Begays agree that, under Tenth Circuit law, the Court must consider seven factors in evaluating an individual's employment status under the FTCA.  See Response at 12.  According to the Begays, they sought facts bearing on these issues long before filing suit, making several FOIA requests to the IHS.  See Response at 12-13.  They explain that, although the IHS acknowledged receipt of the FOIA requests, it later took the position that Dr. Marrocco's credentialing files were privileged.  See Response at 12-13.  The Begays attack the United States for preventing them from conducting any analysis of this issue pursuant to FOIA, but then -- "with the benefit of unilateral access to key facts -- . . . argu[ing] that the seven-factor analysis favors a determination that Dr. Marrocco was an independent contractor."  Response at 13.  The Begays provide an analysis of some of the factors, and then assert that, "[u]nder these circumstances, Plaintiff should be entitled to conduct discovery on Dr. Marrocco's employment status."  Response at 14.  In support of their argument, they cite to McGhee v. United States, 2014 WL 896748, at *1 (W.D. Va. Mar. 6, 2014)(Wilson, J.), where, they contend, the United States District Court for the Western District of Virginia declined to

rule on the question whether locum tenens physicians accused of medical malpractice at a federal hospital were independent contractors until the plaintiff in that case was able to conduct discovery into the matter.  See Response at 14-15.

The Begays next argue that L. Begay exhausted his administrative claims for negligent supervision and negligent hiring/credentialing.  See Response at 15.  They attack the United States' assertion that L. Begay "gave insufficient notice and has therefore failed to satisfy the FTCA's administrative exhaustion requirement with respect to Count II (negligent supervision) and Count III (negligent hiring/credentialing)."  Response at 15.  They assert that the United States overstates the law and overlooks the facts.  See Response at 15.  First, they contend that the FTCA requires only notice of injury and a sum certain of damages, and that the test for the adequacy of notice is "eminently pragmatic" and "should not be interpreted inflexibly."  Response at 16 (quoting Trentadue v. United States, 397 F.3d at 852-53).  Second, they assert that the United States overlooks their amendments to L. Begay's original FTCA notice and that, "as a chronological review of Plaintiff's notice makes clear, those amendments nullify the arguments made by Defendant."  Response at 17.  They contend that, in October 2014, L. Begay amended his FTCA notice -- on October 24, 2014, and October 29, 2014 -- and that these amendments clearly presented the issue of the DDHS' negligence as to the supervision, hiring and/or credentialing of Dr. Marrocco.  See Response at 18-21.

Third, the Begays assert that Counts II and III remain in the case as Mr. and Mrs. Begay assert them.  See Response at 22.  They contend that Mr. and Mrs. Begay each submitted individual notices of administrative claims under the FTCA to the DHHS on March 9, 2015.  See Response at 22.  According to the Begays, "[t]hose notices made claims based on the IHS's

'negligence including, but not limited to, medical negligence, negligent authorization, negligent supervision, negligent hiring and retention, and negligent credentialing/authorization of staff privileges which severely disabled [their] son, Lydell Marvin Begay.'"  Response at 22 (quoting Claim for Damage, Injury, or Death at 19 (dated March 9, 2015), filed November 16, 2015 (Doc. 39-1)("Mr. Begay Claim"); Claim for Damage, Injury, or Death at 24 (dated March 9, 2015), filed November 16, 2015 (Doc. 39-1)("Mrs. Begay Claim")).  They maintain that the DHHS acknowledged receipt of those claims; that, because six months has elapsed since their submission, they may be deemed denied, and that Mr. and Mrs. Begay may pursue their claims in court.  See Response at 22.  The Begays further assert:

> In the FAC filed October 30, 2015, Plaintiffs Marty and Lorene Begay allege claims for loss of society claims that are derivative of claims for negligent supervision, hiring, and credentialing, which have been properly exhausted.
>
> Accordingly, even if this Court were to consider Plaintiff Lydell Begay's administrative claims to have been inadequate for purposes of exhausting claims for negligent supervision, hiring, and credentialing, Defendant's attempt to dismiss Counts II and III fails because these claims were properly exhausted by Plaintiffs Marty Begay and Lorene Begay.

Response at 22-23.

Finally, the Begays argue that, L. Begay re-noticed his claims for negligent supervision, hiring, and credentialing on October 27, 2015.  See Response at 23.  According to the Begays, in that notice, L. Begay asserted a claim for "negligent credentialing, hiring, training, staffing supervision, and retention of physicians, nurses, and other health care providers including, but not limited to, Annicol Marrocco, M.D., who provided Lydell medical care and treatment on March 6 and 13, 2014 at NNMC."  Response at 23.  They assert that L. Begay also stated that "Dr. Marrocco had a history of serious misconduct as a physician and had been sanctioned by

licensing/regulatory authorities before she was credentialed by NNMC to treat Lydell Begay."
Response at 23.  The Begays maintain that, even if the Court concludes that L. Begay's original
notice and amendments was not adequate for exhaustion purposes, "the October 27, 2015 notice
leaves no question that these claims have been properly presented to DHHS."  Response at 23.
They further contend that, assuming that the DHHS does not act sooner to deny these claims, L.
Begay would be permitted to proceed with a lawsuit for these claims on April 27, 2016, at the
latest.  See Response at 23.  The Begays ask that, "if the Court is inclined to grant Defendant's
motion as to Counts II and III as to Lydell Begay, the Court simply stay any pursuit of those
Counts by him until the DHHS denies his October 27, 2015 claim, or until April 27, 2016,
whichever occurs sooner."  Response at 23-24.  They contend that, in the meantime, the Court
should permit Mr. and Mrs. Begay to continue litigating those counts against the United States.
See Response at 24.

### 3.    The United States' Reply.

The United States replied on December 11, 2015.  See United States of America's Reply
to its Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for
Summary Judgment, filed December 11, 2015 (Doc. 43)("Reply").  The United States first
argues that the clear intent of Northern Navajo Medical Center and Medicus Healthcare was to
create an independent contractor relationship.  See Reply at 2.  The United States again notes that
the Tenth Circuit has identified seven factors in making the determination whether a physician is
an independent contractor.  See Reply at 2.  According to the United States, however, "clear
language regarding government control or 'federal employee' status can often prevail over facts
that might otherwise support a finding of 'day-to-day control.'"  Reply at 2 (quoting Woodruff v.

Covington, 389 F.3d at 1126).  The United States argues that Dr. Marrocco was an independent contractor and not a federal government employee based on the non-personal service contract's express language, which identifies Dr. Marrocco as an independent contractor, and based on a lack of evidence manifesting any intent to create an employee relationship.  See Reply at 3.  The United States also rejects the Begays' argument that additional discovery is warranted and takes issue with their reliance on McGhee v. United States.  See Reply at 7.  The United States asserts:

> Aside from a passing reference in the procedural background of the case, *McGhee* offers no meaningful support to Plaintiff's position.  Neither the parties' briefing nor the court's order for limited discovery offers any explanation of what or why additional facts were necessary to that court's determination of subject matter jurisdiction.  And, "at the end of the day, under the contracts and in practice, the doctors had all of the hallmarks of independent contractors, and [plaintiff] marshaled nothing substantial to overcome that conclusion."  *McGhee v. United States*, 2014 WL 896748, at *3 (W.D. Va. Mar. 6, 2014).  Similarly, in this case, none of the discovery sought would be material to the Court's consideration of the Government's Motion.

Reply at 7.  The United States contends that, while a party can seek limited discovery relating to a motion for summary judgment pursuant to rule 56(d) of the Federal Rules of Civil Procedure, here, none of the material sought is material to the Court's consideration of the Motion.  See Reply at 7-8.  The United States maintains that the information that the Begays seek -- hospital or IHS practice, and Dr. Marrocco's compliance or non-compliance -- is not important and has no bearing on the Motion.  See Reply at 7-11.  The United States further asserts: "In sum, even if Plaintiff discovers that Dr. Marrocco was subject to the same rules, schedule, reviews, standards, training and dress code as other physician employees, it would not change the outcome of this Motion.  Such requirements do not defeat independent contractor status."  Reply at 11.

The United States next argues that the Court should dismiss the Begays' claims for negligent hiring and supervision of Dr. Marrocco.  See Reply at 11.  The United States contends

- 27 -

that negligent credentialing, supervision, and hiring are considered "separate and apart from the alleged medical negligence" that may occur during the procedure.  Reply at 12 (quoting Bethel v. U.S. ex. rel Veterans Admin. Med. Ctr. Of Denver, Colorado, 495 F. Supp. 2d 1121).  The United States asserts that L. Begay "refers therefore to his SF-95 submitted **after** the filing of Defendant's motion."  Reply at 12 (emphasis in original).  According to the United States, L. Begay's Complaint on this claim is therefore premature, and the SF-95 is not sufficiently detailed to adequately describe claims related to providers other than Dr. Marrocco.  See Reply at 12.  The United States insists that the Court should dismiss Count II for failure to exhaust to the extent that it is directed to any provider other than Dr. Marrocco.  See Reply at 12.  The United States asserts: "Not only does Plaintiff fail to specify any other provider in the SF-95, but, Plaintiff does not set forth any facts in his Complaint which could be sued to support a claim for negligent supervision or hiring of any other provider."  Reply at 12 (citing Twombly, 550 U.S. at 544).  The United States further argues that, even if L. Begay has properly exhausted his claim for negligent hiring/supervision of Dr. Marrocco, the Court also lacks subject-matter jurisdiction over the claim, because Dr. Marrocco is an independent contractor.  See Reply at 12.  The United States explains:

> The FTCA does not permit the expansion of waiver of immunity except as expressly permitted and Plaintiff cannot use a claim for negligent supervision/hiring to circumvent the limitations imposed by Congress.  Second, the FTCA does not apply to claims "based upon the exercise or performance or failure to perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved was abused."  28 U.S.C. § 2680(a); *Blankenship v. United States*, 2015 WL 2452900, at *3 (W.D. Va. May 22, 2015).  The use of a staffing agency to contract for physician services is among the types of decisions the exception is designed to shield from liability because it involves the exercise of judgment based on considerations of policy.  Therefore Plaintiff's claims for negligent hiring retention and supervision are barred.  *Id.*

Reply at 12-13.

### 4.     The Hearing on the Motion.

The Court held a hearing on the Motion on December 15, 2015.  See Transcript of Hearing (taken December 15, 2015)("Tr.").[43]  The Court first gave its initial impressions of the Motion, indicating that it was inclined to grant the Motion in part and deny it in part.  See Tr. at 2:19-3:22 (Court).  The Court explained:

> Well, I'll certainly hear what anybody wants to say on this motion this afternoon.  I'll give you just some impressions.  It seems to me, and I didn't have time to sort of dig out my most recent case on this, but I thought that I . . . recently had a contractor case, and I'm inclined to think that the United States is right on the contractor issue.   And that this Dr. M[ar]r[o]cco cannot be sued as a Government employee.  He might be able to be sued some other way but not []as a Government employee.  But I also have been fairly liberal.  Sometimes I wonder if I've maybe gone a little too far, but at least fairly liberal on this exhaustion requirement with the Government, and I was inclined to think that there had been enough in the notices to the Government to put . . . the United States on notice of negligent hiring, and supervision and those types of claims.  So I guess I was inclined to grant the motion in part and deny it in part.  But those were my thoughts coming in.  Why don't we take these in sections.  Why don't we at least . . . break it at least into two parts.  First the issue about whether the -- whether there is jurisdiction to bring the claim against the United States for the conduct of Dr. M[ar]r[o]cco, and then we can take up the negligent supervision, the exhaustion issues in a moment.  But Ms. Langenwalter, if you want to argue that first half of the motion.

Tr. at 2:19-3:22 (Court).

The United States then argued in support of its Motion on the independent contractor issue.  See Tr. at 3:23-4:2 (Langenwalter).  The United States stuck to its briefing, citing to Waconda v. United States and the Tenth Circuit's decision in Tsosie v. United States.  See Tr. at

---

[43]The Court's citations to the transcript for this hearing refer to the court reporter's original, unedited version. Any final version may contain slightly different page and/or line numbers.

4:8-19 (Langenwalter).  The United States maintained that the Begays had not distinguished either of those cases.  See Tr. at 4:8-19 (Langenwalter).  It also asserted that the Complaint is devoid of any claims of negligence against any person other than Dr. Marrocco and that the Begays have "not identified a single act other than the failure to submit . . . the CT scan to UNM when they transferred Mr. Begay to UNM."  Tr. at 5:7-18 (Langenwalter).  The United States maintained that a motion to dismiss is therefore appropriate as to any other providers with respect to Count I.  See Tr. at 5:14-6:5 (Langenwalter).  The Court then asked the Begays for their thoughts on the medical negligence issue.  See Tr. at 6:12-17 (Cohen, Court).  The Begays argued that Count I survives, even if it only survives with respect to the alleged negligence of registered nurses who participated in or caused L. Begay's misdiagnoses.  See Tr. at 10:7-11 (Cohen).  The Begays stuck to their arguments from the briefing, contending that L. Begay's tort claims notice and the Complaint assert viable claims against health care providers other than Dr. Marrocco.  See Tr. at 6:19-10:11 (Cohen).  The Begays then turned to the question whether the Court should dismiss Count I with respect to Dr. Marrocco's conduct.  See Tr. at 10:12-12-18 (Cohen).  The Begays argued that the contract's language does not resolve whether the United States closely supervised Dr. Marrocco and that the focus of the analysis should be whether the employer has day-to-day control over the physician.  See Tr. at 12:6-13:3 (Cohen).  They maintained that the United States has not put forth sufficient evidence to establish that the United States did not have day-to-day control.  See Tr. at 13:4-6 (Cohen).  They further asserted:

> I guess the point of our response is that we should be entitled under these unique circumstances with the doctor with a track record of very severe misconduct to know whether, absent what isn't indicated in the documentation there was some kind of supervision or control or oversight put into place to monitor Dr. M[a]rrocco.  That's not clear on the face of the documents, and that would bear directly on the analysis of her employment status.

Tr. at 6:19-10:11 (Cohen).  The Begays contended that they should be able to conduct discovery to determine whether Dr. Marrocco was closely supervised.  See Tr. at 13:15-14:7 (Cohen). They conceded that, on the present record before the Court, it would be difficult for them to argue that the United States had control and supervision over Dr. Marrocco.  See Tr. at 16:21-19:11 (Cohen, Court).  They asserted, however, that the United States had only recently provided them with 1500 pages of documents that they still needed to analyze and review.  See Tr. at 16:21-19:11 (Cohen, Court).

The United States then responded to the Begays' arguments.  See Tr. at 19:12-19 (Court, Langenwalter).  Addressing the discovery issue, the United States reasserted its argument from its Reply, that even if the Begays were to receive all of the discovery that they are hoping to get, that would still not create an employment relationship where there is none.  See Tr. at 20:6-24 (Langenwalter).  The United Stated contended that, even if it was discovered that Dr. Marrocco was subject to the same rules, regulation, reviews, standards, and policies, it is not a factor that the Tenth Circuit or any other court has found to be relevant to whether a contractor can be considered an employee.  See Tr. at 21:3-12 (Langenwalter).  The United States maintained that, in Duplan v. Harper, the Tenth Circuit explained that, even where the United States exercises extensive supervision over a contractor -- such as requiring the contractor to abide by a dress code, and to follow established rules and policies, and restricting their decision-making whether to treat a patient -- the physician is still an independent contractor.  See Tr. at 21:12-25 (Langenwalter).  In sum, the United States insisted that the issue how Dr. Marrocco was supervised or not supervised is "frankly just not relevant to whether or not she was an independent contractor, which is limited to the relationship created by the contract."  Tr. at

21:12-22:7 (Langenwalter).  The United States also confirmed that Dr. Marrocco was not subject to any special training or supervision.  <u>See</u> Tr. at 22:19-24:19 (Court, Langenwalter).  With respect to the Begays' assertion that they identified purported negligent acts that other nurses, staff, and physicians committed, the United States argued that the Complaint's allegations failed to satisfy <u>Iqbal</u> and <u>Twombly</u>, but conceded there would likely be room for the Begays to amend their complaint.  <u>See</u> Tr. at 24:19-28:19 (Court, Langenwalter).  The Court explained how it was inclined to rule on the first issue:

> Well, I'm inclined to grant your motion . . . that the Court lacks subject matter jurisdiction over the complaint to the extent that it seeks relief for any acts of negligence of Dr. Marrocco and then I would be inclined to also grant the motion on a Twombly Iqbal basis . . . because there is no waiver of sovereign immunity. . . . I think the plaintiffs . . . ha[ve] got to identify the who is and identify the whens and tie those up as to what the doctors did but if there is no jurisdictional bar to allowing the plaintiffs to amend, I would be inclined to allow them to be able to file that pleading.

Tr. at 33:12-25 (Court).

The Court and the parties then moved to the negligent hiring, credentialing, and supervision claims.  <u>See</u> Tr. at 34:1-6 (Court, Langenwalter).  The United States conceded that, for the purposes of the Motion, it can assume that negligent supervision and negligent hiring are causes of action that the Begays can bring in this case against these individuals.  <u>See</u> Tr. at 36:15-37:1 (Court, Langenwalter).  The United States also conceded that the negligent hiring and supervision of Dr. Marrocco survives the Motion, but maintained that the negligent supervision, training, or credentialing claim over everybody else does not survive the Motion.  <u>See</u> Tr. at 38:12-15 (Court, Langenwalter).  The parties confirmed that the United States had withdrawn its argument regarding the insufficiency of the exhaustion on Counts II and III with respect to Dr. Marrocco:

> THE COURT:  Well, they're saying that for the negligent supervision and hiring of Dr. Marrocco.
>
> MR. COHEN:  Correct.
>
> THE COURT:  But not for anybody else.
>
> MR. COHEN:  Correct.  So claims two and 3 stand with respect to Dr. M[ar]rocco by virtue of the United States, which apparently has now withdrawn their argument regarding the insufficiency of the exhaustion.
>
> THE COURT:  I hadn't tied it to the counts, but do you agree with that?
>
> MS. LANGENWALTER:  Yes, Your Honor.

Tr. at 44:18-45:4 (Cohen, Court, Langenwalter).  The parties otherwise largely stuck to their briefing, and the Court then expressed how it was inclined to rule on the Motion:

> Well, I'm inclined, I've said what I'm going to do with Dr. Morocco.  I guess I'm toying with this.  I'm not requiring it.  I need to think about it a little bit under 12(b) one not requiring as much as I require with a 12(b)(6) so just leaving that and not requiring an amendment here and just leaving the complaint in place.  I guess I'm inclined to also think that the plaintiffs have exhausted the administrative process as to other doctors and nurses.  It doesn't seem like I have to deal with any supervision, negligent supervision or hiring claims as to anybody else because Dr. M[ar]rocco is out of the case.  And so it's a grant in part and deny in part along those lines.  Is there anything else I'll try to get you an opinion out as soon as possible but that's what I'm inclined to do after reading everything and listening to your arrangements.

Tr. at 66:10-67:6 (Court).

## LAW REGARDING RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511 (10th Cir. 1994)(Barrett, J.)(citations omitted).  A plaintiff generally bears the burden of demonstrating the court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523

U.S. 83, 104 (1998)(Scalia, J.)("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.").  Rule 12(b)(1) allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ. P. 12(b)(1).  The Tenth Circuit has held that motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002)(VanBebber, J.).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981).  But when the attack is factual, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Alto Eldorado Partners v. City of Santa Fe, 2009 WL 1312856, at *8-9 (D.N.M. Mar. 11, 2009)(Browning, J.)(citations omitted)).  The United States Court of Appeals for the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(Randall, J.)(quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion, a party may go beyond the allegations in the complaint to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or other evidence properly before the court.  See New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995)(Brorby, J.); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995)(Baldock, J.).   In those instances where the parties go beyond the pleadings, a court's reference to evidence outside the pleadings does not necessarily convert the motion to a rule 56 motion for summary judgment.  See Holt v. United States, 46 F.3d at 1003 (citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)(Anderson, J.)).   Where, however, the court determines that jurisdictional issues raised in a rule 12(b)(1) motion are intertwined with the case's merits, the court should resolve the motion either under rule 12(b)(6) or rule 56.   See Franklin Sav. Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999)(Murphy, J.); Tippett v. United States, 108 F.3d 1194, 1196 (10th Cir. 1997)(Briscoe, J.). "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003)(Hartz, J.)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)(Seymour, J.)).

## LAW REGARDING RULE 12(B)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency

of a complaint is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Iqbal, 556 U.S. 662, 678 (2009)(citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set

of facts in support of the pleaded claims is insufficient; the complainant must give the court

reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for

these claims."   Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir.

2007)(emphasis omitted).  The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the
> line from conceivable to plausible."   The allegations must be enough that, if
> assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for
> relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Twombly, 550 U.S. at

570)(citations omitted).

Although affirmative defenses must generally be pled in the defendant's answer, not

argued on a motion to dismiss, see Fed. R. Civ. P. 8(c), there are exceptions: (i) where the

defendant asserts an immunity defense -- the courts handle these cases differently than other

motions to dismiss, see Glover v. Gartman, 899 F. Supp. 2d 1115, 1137-39, 1141 (D.N.M.

2012)(Browning, J.)(citing Pearson v. Callahan, 555 U.S. 223 (2009); Robbins v. Oklahoma, 519

F.3d at 1242); and (ii) where the facts establishing the affirmative defense are apparent on the

face of the complaint, see Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)("Under

Rule 12(b), a defendant may raise an affirmative defense by a motion to dismiss for the failure to

state a claim.  If the defense appears plainly on the face of the complaint itself, the motion may

be disposed of under this rule.").   The defense of limitations is the affirmative defense most

likely to be established by the uncontroverted facts in the complaint.  See 5 Charles Alan Wright

et al., Federal Practice and Procedure § 1277 (3d ed. 2014).  If the complaint sets forth dates that

appear, in the first instance, to fall outside of the statutory limitations period, then the defendant

may move for dismissal under rule 12(b)(6). See Rohner v. Union Pac. R.R. Co., 225 F.2d 272, 273-75 (10th Cir. 1955); Gossard v. Gossard, 149 F.2d 111, 113 (10th Cir. 1945); Andrew v. Schlumberger Tech. Co., 808 F. Supp. 2d 1288, 1292 (D.N.M. 2011)(Browning, J.). The plaintiff may counter this motion with an assertion that a different statute of limitations or an equitable tolling doctrine applies to bring the suit within the statute; the Tenth Circuit has not clarified whether this assertion must be pled with supporting facts in the complaint or may be merely argued in response to the motion. Cf. Kincheloe v. Farmer, 214 F.2d 604 (7th Cir. 1954)(holding that, once a plaintiff has pled facts in the complaint indicating that the statute of limitations is a complete or partial bar to an action, it is incumbent upon the plaintiff to plead, either in the complaint or in amendments to it, facts establishing an exception to the affirmative defense). It appears, from case law in several circuits, that the plaintiff may avoid this problem altogether -- at least at the motion-to-dismiss stage -- by simply refraining from pleading specific or identifiable dates, see Goodman v. Praxair, Inc., 494 F.3d 458, 465-66 (4th Cir. 2007); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006); Harris v. New York, 186 F.3d 243, 251 (2d Cir. 1999); Honeycutt v. Mitchell, 2008 WL 3833472 (W.D. Okla. Aug. 15, 2008)(West, J.), and, although the Tenth Circuit has not squarely addressed this practice, the Court has permitted this avoidance practice, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1208-09, 1234-38 (D.N.M. 2014)(Browning, J.).

## LAW REGARDING MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the

initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving

party's case.'" Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013)

(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir.

1991)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

> Before the court can rule on a party's motion for summary judgment, the moving
> party must satisfy its burden of production in one of two ways: by putting
> evidence into the record that affirmatively disproves an element of the nonmoving
> party's case, or by directing the court's attention to the fact that the non-moving
> party lacks evidence on an element of its claim, "since a complete failure of proof
> concerning an essential element of the nonmoving party's case necessarily renders
> all other facts immaterial." Celotex, 477 U.S. at 323-25. On those issues for
> which it bears the burden of proof at trial, the nonmovant "must go beyond the
> pleadings and designate specific facts to make a showing sufficient to establish
> the existence of an element essential to his case in order to survive summary
> judgment." Cardoso v. Calbone, 490 F.3d 1194, 1197 (10th Cir. 2007).

Plustwik v. Voss of Norway ASA, 2013 WL 1945082, at *1 (D. Utah May 9, 2013)(Sam,

J.)(emphasis added). "If the *moving* party will bear the burden of persuasion at trial, that party

must support its motion with credible evidence -- using any of the materials specified in Rule

56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp. v.

Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[44] Once the movant

meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that

there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

---

[44]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme
Court of the United States of America, dissented in Celotex Corp. v. Catrett, this sentence is
widely understood to be an accurate statement of the law. See 10A Charles Allen Wright &
Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the
Court issued a five-to-four decision, the majority and dissent both agreed as to how the
summary-judgment burden of proof operates; they disagreed as to how the standard was applied
to the facts of the case.").

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("[O]nce a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried." (citation omitted)(internal quotation marks omitted)).

Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. CIV 07-2123 JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)). "In

responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248).  Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the ultimate standard of proof is relevant for purposes of

ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254.  Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  Fourth, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts.  This doctrine developed most robustly in the qualified immunity arena.  In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81.  The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.  Fed. Rule Civ. Proc. 56(c).  As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . .  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life.  Respondent's version of

events is so utterly discredited by the record that no reasonable jury could have believed him.  The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

Scott v. Harris, 550 U.S. at 380-81 (emphasis in original).

The Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304

(10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts."   York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312 (brackets omitted).  "The Tenth Circuit, in Rhoads

v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),[45]] explained that the

blatant contradictions of the record must be supported by more than other witnesses'

testimony[.]"   Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)

---

[45]Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Rhoads v. Miller, Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012), and Stevens v. United States, 61 F. App'x 625 (10th Cir. 2003), have persuasive value with respect to material issues, and will assist the Court in its preparation of this Memorandum Opinion and Order.

(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (10th Cir. 2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." Scott v. Harris, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380. In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . . Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted). See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## LAW REGARDING THE FTCA

As with any jurisdictional issue, the party bringing the suit against the United States bears the burden of proving that Congress has waived sovereign immunity.  See James v. United States, 970 F.2d 750, 753 (10th Cir. 1992).  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983).  "Challenges to jurisdiction can . . . be raised at any time prior to final judgment."  Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004)(citing Capron v. Van Noorden, 6 U.S. (2 Cranch) 126 (1804)).

The terms of the United States' consent define the parameters of federal-court jurisdiction to entertain suits brought against it.  See United States v. Orleans, 425 U.S. 807, 814 (1976); Ewell v. United States, 776 F.2d 246, 248 (10th Cir. 1985).  When the United States waives its immunity from suit, a court should neither narrow the waiver nor "take it upon [itself] to extend the waiver beyond that which Congress intended."  Smith v. United States, 507 U.S. at 203 (quoting United States v. Kubrick, 444 U.S. 111, 117-18 (1979)).

In 1948, Congress enacted the FTCA, which waived the United States' sovereign immunity for certain torts that federal employees commit.  See F.D.I.C. v. Meyer, 510 U.S. at 475.  Congress waived sovereign immunity only for certain torts that United States employees cause while acting within the scope of their office or employment.  See 28 U.S.C. § 1346(b).

1.    **Exhaustion Requirements**.

There are certain procedural requirements in suing the United States under the FTCA to which a plaintiff must strictly adhere before a district court can exercise jurisdiction.  The FTCA's jurisdictional statute provides:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have <u>first presented the claim</u> to the appropriate Federal agency and his claim shall have been <u>finally denied by the agency</u> in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a)(emphasis added).  This statute "requires that claims for damages against the government be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d 840, 852 (10th Cir. 2005)(Tymkovich, J.)(quoting <u>Bradley v. United States ex. rel. Veterans Admin.</u>, 951 F.2d 268, 270 (10th Cir. 1991)(Anderson, J.)).

"[A] claim should give notice of the underlying facts and circumstances 'rather than the exact grounds upon which plaintiff seeks to hold the government liable.'"  <u>Staggs v. United States ex rel. Dep't of Health and Human Servs.</u>, 425 F.3d 881, 884 (10th Cir. 2005)(McConnell, J.)(quoting <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d at 853).  The Tenth Circuit has added that "the FTCA's notice requirements should not be interpreted inflexibly."  <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d at 853.  Whether a plaintiff's administrative claim is sufficient to meet 28 U.S.C. § 2675(a)'s notice requirement is a question of law.  <u>See</u> <u>Staggs v. United States ex rel. Dep't of Health and Human Servs.</u>, 425 F.3d at 884.

**2.     <u>Filing Deadlines.</u>**

The Tenth Circuit recently observed:

> [T]he FTCA has both an administrative-exhaustion requirement, set forth in 28 U.S.C. § 2675(a), and a statute of limitations, set forth in 28 U.S.C. § 2401(b). Combined, these provisions act as chronological bookends to an FTCA claim,

marking both a date before which a claim may not be filed and a date after which
any filing is untimely.

Barnes v. United States, 776 F.3d 1134, 1139 (10th Cir. 2015)(Holmes, J.).  Once a tort claim

accrues against the government, 28 U.S.C. § 2401 gives a claimant two years to present that

claim in writing to the appropriate federal agency.  See 28 U.S.C. § 2401(b)(explaining that

claim is "forever barred" unless presented within two years).  After submission of a written

claim, the agency usually has six months to reach a final disposition on the claim.  If the agency

denies the claim, the claimant has six months to file suit in federal court.  See 28 U.S.C. §

2401(b).

　　　　If the agency fails to make a final disposition of the claim within six months, the claimant

may "deem[]" that failure a "final denial of the claim," and proceed with his or her suit under the

FTCA.  28 U.S.C. § 2675(a).  In the Tenth Circuit, "(at least until there has been a final denial by

the relevant agency) there is no limit on when a plaintiff may file a lawsuit predicated on a

deemed denial."  Barnes v. United States, 776 F.3d at 1140-41.  An agency may "trigger[] §

2401(b)'s six-month limitations period through final denial of administrative FTCA claims after

a 'deemed denial.'"  Barnes v. United States, 776 F.3d at 1141.

### 3.　　Effect of Failure to Exhaust.

　　　　"[A]s a general rule, a premature complaint cannot be cured through amendment, but

instead, plaintiff must file a new suit."  Duplan v. Harper, 188 F.3d at 1199 (internal quotations

omitted).  This rule exists because "[a]llowing claimants generally to bring suit under the FTCA

before exhausting their administrative remedies and to cure the jurisdictional defect by filing an

amended complaint would render the exhaustion requirement meaningless and impose an

unnecessary burden on the judicial system."  Duplan v. Harper, 188 F.3d at 1199.  Courts must

dismiss these claims "without regard to concern for judicial efficiency."  Ruppert v. Aragon, 448 F. App'x 862, 863 (10th Cir. 2012)(O'Brien, J.)(unpublished).  Even the filing of an amended complaint may not serve to cure a prematurely filed original complaint.  See Stevens v. United States, 61 F. App'x 625, 627 (10th Cir. 2003)(Baldock, J.)(unpublished).

There is at least one limited exception to the general rule.  Duplan v. Harper recognizes an exception where the United States "expressly agreed" to the district court's decision to treat the amended complaint as a new action.  188 F.3d at 1199.  See Mires v. United States, 466 F.3d 1208, 1211 (10th Cir. 2006)(McConnell, J.)(finding new action where plaintiff "sought permission to file -- and, with the government's consent and district court's permission, did file -- an amended complaint").

### 4.      Definition of "Sufficient Notice".

Courts define "sufficient notice" based on the facts of each case before them.  In Estate of Trentadue ex rel. Aguilar v. United States, the United States contended that the plaintiffs' administrative claim was insufficient for notice of intentional infliction of emotional distress, because it was based on a theory that prison officials had murdered Trentadue, the inmate, and the allegations did not discuss the specific grounds on which the district court relied in awarding damages, "namely the government's treatment of the Trentadue family in the aftermath of his death and its actions in conducting an autopsy after claiming that no autopsy would be performed without prior approval."  397 F.3d at 852.  The Tenth Circuit disagreed, holding that the "plaintiffs' administrative claim provided notice that [the Department of Justice] should investigate the prison officials' conduct."  397 F.3d at 853.  The Tenth Circuit reasoned that language within the administrative claim "gave DOJ notice of the facts and circumstances

surrounding plaintiffs' emotional distress claim and, moreover, is consistent with the plaintiffs' subsequent allegations in their amended complaints."  397 F.3d at 853.

The Tenth Circuit contrasted Estate of Trentadue ex rel. Aguilar v. United States with Dynamic Image Techs., Inc. v. United States, 221 F.3d 34 (1st Cir. 2000)(Selya, J.), where the United States Court of Appeals for the First Circuit held that the plaintiff's administrative claim did not put the agency on notice that it should have investigated the potentially tortious conduct, because the plaintiff's administrative claims were for "misrepresentation, libel, slander, contractual interference, and discrimination," and the amended claims for false arrest arose out of two separate incidences.  221 F.3d at 40.  The First Circuit stated: "Though prolix, that claim did not contain so much as a hint about the alleged false arrest or the incident that spawned it." 221 F.3d at 40.  The First Circuit thus concluded that, "regardless of the labels employed in the amended complaint, that complaint, in substance, seeks recovery based solely on an incident that was not mentioned in the plaintiffs' administrative claim."  221 F.3d at 40 (emphasis omitted).

In Glade ex rel. Lundskow v. United States, a man receiving mental health treatment at a VA facility alleged that his therapist worsened his condition by initiating a sexual relationship with him.  See 692 F.3d at 720.  He filed a notice of claim with the VA that "d[id] not mention a failure of anyone to use due care besides the therapist."  692 F.3d at 722.  The Seventh Circuit, reviewing the notice, commented that "Reading the administrative claim you would think the plaintiff was just seeking damages under a theory of respondeat superior against an employer for an employee's battery, and we know that such a theory won't fly under the Tort Claims Act." 692 F.3d at 722.  The plaintiff recognized this problem before filing his complaint, and thus

asserted a "special relationship" theory of liability instead.  692 F.3d at 723.  The Seventh Circuit

affirmed the district court's decision to dismiss the suit, explaining:

> The administrative claim need not set forth a legal theory, but it must allege facts
> that would clue a legally trained reader to the theory's applicability.  *Palay v.
> United States,* 349 F.3d 418, 425–26 (7th Cir.2003); *Murrey v. United States,* 73
> F.3d 1448, 1452–53 (7th Cir.1996).  The plaintiff's claim didn't do that.  The
> legally trained reader would assume that the plaintiff simply was unaware that the
> mere fact of a battery by a VA employee would not impose liability on the
> employer.  We're about to see that the "special relationship" tort theory advanced
> in the plaintiff's complaint (as distinct from the administrative claim) is outside
> the bounds of plausibility -- hardly the sort of theory that the VA's legal
> department should have guessed would be the ground of a lawsuit.

692 F.3d at 722-23.

### 5.    **Medical Cases.**

Some courts have required the claimant to provide extensive information about the

injuries alleged in the complaint.  In Staggs v. United States ex rel. Dep't of Health and Human

Servs., the Tenth Circuit held that the plaintiff's administrative claim, accusing the hospital of "a

substantial departure from the standard of care and . . . negligent management of her pregnancy

and labor," was not sufficient to put the agency on notice that it should have investigated a claim

based on lack of informed consent.  425 F.3d at 884.  The Tenth Circuit stated that "[n]othing in

Staggs' administrative claims suggests that Staggs consented to a course of treatment or

remained on such a course without being informed of her options and risks."  425 F.3d at 884.

The Tenth Circuit reasoned that, "given the length and factual specificity of Staggs' description

of [the administrative] claim" and the claim's failure to "mention [] consent or a suitable

synonym, [the government agency] could have reasonably concluded that a claim of lack of

informed consent was not intended and that an investigation into lack of informed consent was

unnecessary."  425 F.3d at 885.

Ham v. United States, a similarly restrictive case, involved a prisoner's claims against three dentists who attempted to fix a damaged tooth.  See 2008 WL 818197, at *4.  The plaintiff's administrative claim focused on the first two dentists' alleged errors, mentioning the third dentist only in passing.  The complaint, however, focused on the third dentist's refusal to repair, rather than extract, the tooth.  See 2008 WL 818197, at *4.  Although the court said that the claim "encompasses any cause of action fairly implicit in the facts," it dismissed the complaint, because it "offers the first notice that [the third dentist's] actions were legally objectionable."  2008 WL 818197, at *4.

In Palay v. United States, 349 F.3d 418 (7th Cir. 2003)(Rovner, J.), a prisoner sent a notice of a claim charging the Bureau of Prisons with failing to protect him from violence at the hands of fellow inmates and describing his injuries, but omitting "facts suggesting that the prison medical staff had treated him inappropriately."  349 F.3d at 426.  The prisoner later brought suit on a medical malpractice theory.  The Seventh Circuit held that, although it was a "close[] question," the prisoner failed to provide sufficient notice, because he "did not include facts in his [notice] from which a legally sophisticated reader might have discerned that he had received inadequate medical treatment."  349 F.3d at 427 (distinguishing this standard from the Fifth Circuit's more liberal standard).  See Bethel v. U.S., ex rel. Veterans Admin. Med. Ctr. of Denver, Colorado, 495 F. Supp. 2d at 1124 (holding that plaintiff's treatment-based claim, which focused on medical malpractice, was insufficient notice of subsequent negligent supervision argument).

Other courts have been more generous.  In Coffey v. United States, 906 F. Supp. 2d 1114 (D.N.M. 2012)(Browning, J.), the Court determined that a ninety-word claim that alleged that a

prisoner's "medical condition was ignored, that he was denied medication, and that he was transferred by the [Bureau of Indian Affairs]" provided sufficient notice of his mother's negligent screening and transfer theories.  906 F. Supp. 2d at 1153-54.  The Court found that the claim, despite its brevity, "gave the BIA notice of the facts and circumstances surrounding Crutcher's medical needs and subsequent death [sufficient] to provide the BIA notice that it should have investigated the underlying conduct."  906 F. Supp. 2d at 1154.

## ANALYSIS

The Court will grant in part and deny in part the Motion.  First, the Court concludes that it lacks subject-matter jurisdiction over Count I of the Complaint to the extent that it seeks relief for any acts of negligence of Dr. Marrocco on the grounds that Dr. Marrocco was an independent contractor and not an employee.  The Court will also deny the Begays' request that the Court postpone ruling on the Motion until additional discovery is conducted with respect to Dr. Marrocco's employment status.  Second, with respect to the Begays' allegation that other Northern Navajo Medical Center staff members committed medical negligence, the Court concludes that the Complaint complies with the pleading requirements of Iqbal and Twombly, and that amendment is therefore unnecessary.  Third, the Court concludes that Mr. and Mrs. Begay, but not L. Begay, have exhausted the administrative remedies for Count II and Count III with respect to the negligent supervision and hiring of other Northern Navajo Medical Center staff, nurses, and doctors in this case.  It will allow them to amend the Complaint on Counts II and III to comply with the pleading requirements of Iqbal and Twombly.  Finally, at the December 15, 2015, hearing, the United States withdrew its argument about the insufficiency of exhaustion with respect to Dr. Marrocco for Counts II and III.

I.      **THE COURT WILL DENY THE BEGAYS' REQUEST TO CONDUCT ADDITIONAL DISCOVERY ON DR. MARROCCO'S EMPLOYMENT STATUS.**

The Begays contend that they should be entitled to additional discovery to assess Dr. Marrocco's employment status.  See Response at 11-12.  They maintain that the determination whether a physician is an independent contractor under the FTCA is a fact-intensive one.  See Response at 12.  According to the Begays, they sought facts bearing on these issues long before filing suit, making several FOIA requests to the IHS.  See Response at 12-13.  They explain that, although the IHS acknowledged receipt of the FOIA requests, it later took the position that Dr. Marrocco's credentialing files were privileged.  See Response at 12-13.  The Begays attack the United States for preventing them from conducting any analysis of this issue pursuant to FOIA, but then "with the benefit of unilateral access to key facts . . . argu[ing] that the seven-factor analysis favors a determination that Dr. Marrocco was an independent contractor."  Response at 13.  The Begays insist that, "[u]nder these circumstances, Plaintiff should be entitled to conduct discovery on Dr. Marrocco's employment status."  Response at 14.  In support of their argument, they cite to McGhee v. United States, where, they contend, the United States District Court for the Western District of Virginia declined to rule on the question whether locum tenens physicians accused of medical malpractice at a federal hospital were independent contractors until the plaintiff in that case was able to conduct discovery into the matter.  See Response at 14-15 (citing McGhee v. United States, 2014 WL 896748, at *1).  They also attach the declaration of Seth T. Cohen, the Begays' attorney, pursuant to rule 56(d) of the Federal Rules of Civil Procedure.  See Declaration of Seth T. Cohen Pursuant to Fed. R. Civ. P. 56(d) (executed November 16, 2015), filed November 16, 2015 (Doc. 39-1)("Cohen Decl.").

The United States agrees that, while a party can seek limited discovery relating to a motion for summary judgment pursuant to rule 56(d), here, none of the information sought is material to the Court's consideration of the Motion.  See Reply at 7-8.  The United States maintains that the information that the Begays seek -- hospital or IHS practice and Dr. Marrocco's compliance or non-compliance -- is not important and has no bearing on the Motion. See Reply at 7-11.  The United States further asserts: "In sum, even if Plaintiff discovers that Dr. Marrocco was subject to the same rules, schedule, reviews, standards, training and dress code as other physician employees, it would not change the outcome of this Motion.  Such requirements do not defeat independent contractor status."  Reply at 11.

The Court agrees with the United States and will deny the Begays' request to conduct additional discovery on Dr. Marrocco's employment status.   In response to a motion for summary judgment, the nonmovant can request that the Court, under rule 56(d): (i) "defer considering the motion or deny it," (ii) "allow time to obtain affidavits or declarations or to take discovery," or (iii) "issue any other appropriate order."  Fed. R. Civ. P. 56(d).  In their Response, the Begays cite to rule 56(d) and attach a sworn declaration to the Response in accordance with rule 56(d).  The Tenth Circuit has explained that, "if the party filing the Rule 56([d])[46] affidavit has been dilatory, or the information sought is either irrelevant to the summary judgment or merely cumulative, no extension will be granted."  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1554 (10th Cir. 1993).

---

[46]Rule 56(d) of the Federal Rules of Civil Procedure was previously codified at Rule 56(f).  Many of the cases discussing the rule 56 affidavit therefore refer to rule 56(f).  The Court will modify quotes to reflect that the rule is currently codified at 56(d).

Here, the Court concludes that the information sought is irrelevant or not material to the Court's consideration of the Motion. The Cohen Decl. asserts that the contract between the United States and Medicus Healthcare does not address Northern Navajo Medical Center's supervision and control of Dr. Marrocco's medical work or Northern Navajo Medical Center's administrative control over Dr. Marrocco generally, which he asserts are central to the determination of Dr. Marrocco's employment status. See Cohen Decl. at 1-4. Moreover, the Court agrees with the United States that, even if the Begays discovered that Dr. Marrocco was subject to the same rules, schedule, reviews, standards, training, and dress code as other employee physicians, it would not alter the outcome in this case.

> Pervasive regulation of [the doctor] such that the doctor (1) could not refuse to see a VA patient, (2) was required to be present at all VA neurological clinics, (3) could be terminated by the VA hospital, and (4) had to conform to the VA's rules and regulations, did not defeat the independent contractor exemption from FTCA liability.

Bethel v. United States, 456 F. App'x 771, 779 (10th Cir. 2012)(citing Lurch v. United States, 719 F.2d 333, 338 (10th Cir. 1983)).

## II.    MEDICUS HEALTHCARE IS AN INDEPENDENT CONTRACTOR WITH THE UNITED STATES.

As a general rule, a motion to dismiss brought under rule 12(b)(1) cannot be converted into a motion for summary judgment under Rule 56. See Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir. 1987). An exception to this general rule exists, however, "when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case." Trainor v. Appollo Metal Specialties, Inc., 318 F.3d 976, 978 (10th Cir. 2002). In this case, "Rule 56 governs because the determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues."

Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991).  The distinction between rule 12(b)(1) and a rule 56 analysis is immaterial in this case, because a waiver of the United States' immunity is a jurisdictional prerequisite to the Court exercising its judicial power in this case.  If Dr. Marrocco is not a federal employee, the Court need not, for the purposes of the United States' motion, reach the merits of the medical malpractice claims associated with their treatment of L. Begay.  Because the United States has not, under the FTCA, waived its immunity for torts that independent contractors commit, and because Dr. Marrocco cannot be considered federal employee under the applicable federal law, the Court will grant the Motion on Count I to the extent that it seeks relief for any acts of negligence of Dr. Marrocco on the grounds that Dr. Marrocco was an independent contractor, and not an employee.  The Court will separately address each of the factors that the Tenth Circuit has indicated are applicable to its analysis, applying them to the facts in this case.  The Court is convinced that Dr. Marrocco is, under federal law, an independent contractor.

A.      **THE PARTIES' INTENT SUGGESTS THAT THE PARTIES INTENDED TO MAKE DR. MARROCCO AN INDEPENDENT CONTRACTOR, AND NOT A UNITED STATES EMPLOYEE.**

The United States relies on its contract with Medicus Healthcare to argue that the United States intended to create an independent contractor relationship.  While the contract that the United States offers the Court may not, alone, establish a contractor relationship, it goes a long way toward establishing independent-contractor status.

In Tsosie v. United States, the Tenth Circuit concluded that the  language of the contract into which the parties entered reflected an intent to create an independent contractor relationship. The contract at issue stated: "It is expressly agreed and understood that this is a nonpersonal

services contract . . . under which the professional services rendered by the Contractor are rendered in his capacity as an independent contractor."  452 F.3d 1164.  The contract also provided that "[t]he Government may evaluate the quality of professional and administrative services provided, but retains no control over professional aspects of the services rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments."  452 F.3d 1164.

The contract at issue in this case contains almost identical language to that which the Tenth Circuit considered in <u>Tsosie v. United States</u>.  Under the contract into which the United States and Medicus Healthcare entered, the medical services that Medicus Healthcare provides are to be "rendered in its capacity as an independent contractor."  Contract at 6.  Although "[t]he [United States] may evaluate the quality of professional and administrative services provided," the United States "retains no control over professional aspects of the services rendered, including by example, the Contractors professional medical judgment, diagnosis, or specific medical treatments."  Contract at 6.  Medicus Healthcare also agrees to indemnify the United States for the actions of Medicus Healthcare's employees and agents, <u>see</u> Contract at 6, and it carries liability insurance, <u>see</u> Motion ¶ 23, at 5 (setting forth this fact); Response at 5 (not disputing this fact).  The Begays contend that "[t]he [United States'] control over 'professional aspects' of work is not the issue."  Response at 13 (citing <u>Lilly v. Fieldstone</u>, 876 F.2d at 859).  They further assert that "this contractual language does not address the issue of supervision at all, nor does it address other nodes of administrative control that NNMC may have had over Dr. Marrocco[]."  Response at 13.  The Begays stress that "the Contract indicates that 'the Government may evaluate the quality of the professional and administrative services provided.'"  Response at 13.

The Tenth Circuit has noted, however, that "being subject to hospital's rules as a condition of staff privileges does *not* remotely make a private physician an employee of that hospital." Waconda v. United States, 2007 WL 2219472, at *12 (emphasis in original)(quoting Lilly v. Fieldstone, 876 F.2d at 860).  See Duplan v. Harper, 188 F.3d at 1200-02 (holding that a physician was an independent contractor despite being subject to hospital quality control regulations, record-keeping requirements, dress code, and office-hours).  Furthermore, "clear language regarding government control or 'federal employee' status can often prevail over facts that might otherwise support a finding of 'day-to-day control.'"  Woodruff v. Covington, 389 F.3d at 1127.  Consistent with the contract's unambiguous plain terms into which Medicus Healthcare and the United States entered, and with Tenth Circuit case law, the Court concludes that the parties intended to establish an independent contractor and not an employer-employee relationship.

> **B.     WHETHER THE UNITED STATES CONTROLS ONLY THE END RESULT, OR MAY ALSO CONTROL THE MANNER AND METHOD OF REACHING THE RESULT, COUNSELS THAT DR. MARROCCO WAS AN INDEPENDENT CONTRACTOR.**

The Begays contend that the contract's language does not resolve whether the United States closely supervised Dr. Marrocco and that the Court's focus should be whether the employer has day-to-day control over the physician.  See Tr. at 12:6-13:3 (Cohen).  They maintain that the United States has not put forth sufficient evidence to establish that it did not have day-to-day control.  See Tr. at 13:4-6 (Cohen).  They further contend:

> I guess the point of our response is that we should be entitled under these unique circumstances with the doctor with a track record of very severe misconduct to know whether, absent what isn't indicated in the documentation there was some kind of supervision or control or oversight put into place to monitor Dr.

> M[a]rrocco.  That's not clear on the face of the documents, and that would bear
> directly on the analysis of her employment status.

Tr. at 6:19-10:11 (Cohen).  Although, as explained above, the Begays contend that they should

be able to conduct discovery to determine whether Dr. Marrocco was closely supervised, they

conceded at the hearing that on the present record before the Court it would be difficult for them

to argue that the United States had control and supervision over Dr. Marrocco.  See Tr. at 13:15-

19:11 (Cohen, Court).  Moreover, even if the Begays discovered that Dr. Marrocco was subject

to the same rules, schedule, reviews, standards, training, and dress code as other employee

physicians, "physicians are in a unique position with respect to the application of the-right-to-

control test."  Waconda v. United States, 2007 WL 2219472, at *13 (citing Tsosie v. United

States, 452 F.3d at 1163 ("[W]e recognize that a physician 'must have discretion to care for a

patient and may not surrender control over certain medical details.'")(internal quotation omitted);

Woodruff v. Covington, 389 F.3d at 1127 ("[W]e simply take into account the doctor's medical

and ethical obligations of independent judgment when we apply the traditional control test.");

Lilly v. Fieldstone, 876 F.2d at 859 ("The 'control' test is subject to a doctor's medical and

ethical obligations."); Lurch v. United States, 719 F.2d at 337 ("[I]t seems logical that some

modified control test or some different test should apply with respect to physicians.").  In the

context of this case law, and given that, under the plain language of the contract between the

parties and the medical and ethical standards applicable to physicians, Dr. Marrocco maintained

control over medical decision making, the Court does not think that the evidence establishes the

United States' control over Dr. Marrocco.  Accordingly, the Court concludes that Dr. Marrocco

was not under the United States' day-to-day control or supervision, but exercised her

independent medical judgment for L. Begay's care and treatment.  The Court concludes that this

second factor supports a conclusion that Dr. Marrocco was an independent contractor and not a United States employee.

### C.   WHETHER THE PERSON USES HIS OWN EQUIPMENT OR THAT OF THE UNITED STATES IS NOT A DETERMINATIVE FACTOR IN THE HOSPITAL CONTEXT.

The United States seems to concede that Dr. Marrocco used the United States' property to provide L. Begay medical treatment.  The United States argues, however, that, to the extent that this factor weighs in favor of an employee relationship, the Court should dismiss it as unimportant in the modern medical context.  See Motion at 11.  The United States maintains that physicians no longer own black bags of instruments, and that the use of any medical equipment remains in the physician's control.  See Motion at 11.  The Tenth Circuit has noted that, while this admission supports a finding that Dr. Marrocco was a federal employee, it is not an important factor in the modern context:

> Given that [a physician] does not use his own tools or equipment, the third factor favors "employee" status, but unremarkably so: When a physician shows up to work in today's world -- either as an independent contractor or a full-fledged employee -- he no longer is likely to carry all relevant medical instruments in a black satchel.  Instead, it is expected that he will make full use of the hospital's physical facilities during the course of his service.

Tsosie v. United States, 452 F.3d at 1164.  The Court agrees that this third factor is not particularly persuasive.  The Court has explained:

> Given the complexity, size, and expense of modern medical technology, it is unrealistic to expect an individual physician to provide personally all the equipment he may need in an emergency room setting.  Moreover, the Court notes that use of such tools, and the interpretation of the information the tools provide, remains within the control of the physician rendering a diagnosis, and the treatment remains based on that physician's judgment.

Waconda v. United States, 2007 WL 2219472, at *14.  In any case, the fact that the United States owns the equipment that doctors at Northern Navajo Medical Center use is not a significant factor counseling for a finding that Dr. Marrocco was a federal employee at the time she treated L. Begay.

### D.    MEDICUS HEALTHCARE PROVIDES LIABILITY INSURANCE.

The contract between Medicus Healthcare and the United States requires Medicus Healthcare to be solely liable and to expressly indemnify the United States "with respect to any liability producing acts or omissions by it or its employees or agents."  Motion ¶ 21, at 5 (setting forth this fact).  See Contract at 6; Response at 5 (not disputing this fact).  Further, "Medicus Healthcare Solutions, LLC purchased medical malpractice insurance covering Dr. Marrocco, which was in effect at all relevant times."  Motion ¶ 23, at 5 (setting forth this fact).  See Response at 5 (not disputing this fact).  That Medicus Healthcare provided liability insurance and indemnified the United States for Dr. Marrocco's actions is a factor that strongly suggests that Dr. Marrocco was not a federal employee, but rather was an independent contractor.

### E.    MEDICUS HEALTHCARE PAID SOCIAL SECURITY TAX.

The United States notes that, under the contract between the United States and Medicus Healthcare "[t]he contractor was responsible for paying for necessary travel, per diem, housing, and applicable taxes."  Motion ¶ 17, at 5 (setting forth this fact).  See Response at 4 (not disputing this fact).  The Begays do not dispute this fact, but maintain that "Defendant also provides no evidence as to who pays Dr. Marrocco's social security tax[.]"  Response at 14.  While the contract does not specifically use the phrase "social security tax," the phrase "applicable taxes," including "federal and state," can reasonably be interpreted to include social

security tax.  This factor supports a finding that Dr. Marrocco was an independent contractor and not a federal employee.

> **F.      THE FACTOR WHETHER FEDERAL REGULATIONS PROHIBIT FEDERAL EMPLOYEES FROM PERFORMING SUCH CONTRACTS DOES NOT SUPPORT A CONCLUSION THAT DR. MARROCCO WAS A FEDERAL EMPLOYEE.**

The Begays do not argue that federal regulations prohibit federal employees from performing the services for which the United States contracted with Medicus Healthcare, and the Court is not aware of any such regulations.  "[I]mplicit in the Tenth Circuit's holdings regarding physician-contractors, the United States retains the discretion to have its employees perform emergency medical services."  Waconda v. United States, 2007 WL 2219472, at *15.  In any case, the Court does not think that, because the United States may choose to contract this work to private third-parties, particularly in remote parts of a large, rural state like New Mexico, this factor points strongly in either direction.  See Waconda v. United States, 2007 WL 2219472, at *15.

> **G.      WHETHER THE INDIVIDUAL HAS AUTHORITY TO SUBCONTRACT TO OTHERS SUPPORTS A CONCLUSION THAT DR. MARROCCO WAS AN INDEPENDENT CONTRACTOR.**

In Tsosie v. United States, the Tenth Circuit held that this seventh factor counsels in favor of the United States when the contractor has the right to subcontract with others.  See 452 F.3d at 1164.  Here, the parties do not discuss this factor, but there is nothing in the record to suggest that Medicus Healthcare did not have the ability to subcontract to others.  The Court therefore concludes that this factor weighs in favor of a finding that Dr. Marrocco was an independent contractor, or at least the Medicus Healthcare was an independent contractor, and Dr. Marrocco was a Medicus Healthcare employee and not a federal employee.

In sum, after weighing each of the factors that the Tenth Circuit has indicated are applicable to the Court's analysis under the FTCA, the Court concludes that the United States did not maintain the right to control Dr. Marrocco to an extent sufficient to undermine her alleged status as an independent contractor.  Consistent with these findings and with Tenth Circuit caselaw, the Court concludes that the Begays have not established a genuine issue of material fact whether the Court has jurisdiction over this matter.  The Court will grant summary judgment on Count I in favor of the United States on the Begays' claims arising out of Dr. Marrocco's actions.

**III.     TO THE EXTENT THAT THE BEGAYS SEEK RELIEF FOR THE ACTS OF MEDICAL NEGLIGENCE OF OTHER NORTHERN NAVAJO MEDICAL CENTER STAFF, THE COURT CONCLUDES THAT THE COMPLAINT COMPLIES WITH <u>IQBAL</u> AND <u>TWOMBLY</u>'S REQUIREMENTS, AND THAT <u>AMENDMENT IS THEREFORE UNNECESSARY.</u>**

The Court has already concluded that Dr. Marrocco was not a federal employee, but was rather an independent contractor or an independent contractor's employee.  It has therefore granted summary judgment on Count I in favor of the United States on the Begays' claims arising out of Dr. Marrocco's alleged negligent actions.  In their Response, however, the Begays assert that, "[e]ven assuming Dr. Marrocco was an independent contractor, the Complaint plainly alleges malpractice on behalf of the 'medical staff of NNMC's emergency room,' *not just Dr. Marrocco*."  Response at 9 (citing Complaint ¶ 15, at 5)(emphasis in Response).  The Court agrees with the Begays that the Complaint alleges medical malpractice by "the medical staff" at Northern Navajo Medical Center and that this allegation "appears throughout the Complaint where medical negligence is addressed."  Response at 10 (citing Complaint ¶ 2, at 2 (referring to misdiagnosis by "NNMC's physicians and staff"); <u>id.</u> ¶¶ 29-30, at 7-8 (asserting malpractice

claim based on conduct of "the medical staff and personnel at NNMC")).  With respect to Count

I, the Complaint alleges:

> 29.　　In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant -- including through the medical staff and personnel at NNMC -- was under a duty to possess and apply the knowledge and to use the skill and care that is used by reasonably well-qualified healthcare providers in the same or similar circumstances.

> 30.　　Defendant -- including through the medical staff and personnel at NNMC -- breached its duty of care to Lydell Begay and was negligent in the management of Lydell Begay's health and safety.  Defendant's negligence, errors, acts, and omissions include but are not limited to:

>> a.　Failing to properly diagnose Lydell Begay's condition and instead treating him for an eye infection;

>> b.　Failing to properly refer Lydell Begay to a neurologist and/or neurological services capable of treating such an illness;

>> c.　Failing to hospitalize and/or transfer Lydell Begay to a higher level of care in a timely and expeditious manner;

>> d.　Failing to perform and/or order diagnostic tests and/or provide treatment relevant to Lydell Begay's condition;

>> e.　Failing to timely diagnose and treat Lydell Begay; and

>> f.　Failing to convey the radiographic studies conducted on Lydell Begay on March 13, 2015 upon his transfer to UNMH.

> 31.　　By its operation of a medical center, Defendant held itself out to be a safe environment for diagnosis and treatment, and entered into an express and/or implied duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified physicians practicing under the same or similar circumstances.

> 32.　　Defendant breached its duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified health care providers practicing under the same or similar circumstances.

> 33.　　As a direct and foreseeable result of Defendant's negligent conduct, Plaintiff Lydell Begay has suffered injuries and damages described herein.

34.     As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff Lydell Begay has incurred, and continues to incur, medical and related expenses all in an amount not presently determinable but to be proven at the time of trial.

35.     As a further direct and proximate cause of Defendant's negligent conduct, Plaintiff Lydell Begay has sustained a loss of wages and other benefits and will continue to suffer a loss of wages and other benefits in the future, and has lost the ability to provide domestic services to himself and his family, all in an amount not presently determinable but to be proven at the time of trial.

36.     As a further direct and proximate result of Defendant's negligent conduct, Plaintiff Lydell Begay has suffered, and will continue to suffer, severe physical, mental, and emotional pain, suffering, and anguish, all in an amount not presently determinable but to be proven at the time of trial.

37.     Defendant's negligence proximately caused all of Plaintiff Lydell Begay's injuries.  In the alternative, as a further direct and proximate result of Defendant's negligent conduct, Plaintiff Lydell Begay suffered a lost chance of a better outcome to avoid or minimize his injuries, all in an amount not presently determinable but to be proven at the time of trial.

38.     As a further direct and proximate result of Defendant's negligent conduct, Plaintiff Lydell Begay has suffered a loss of the value of the enjoyment of life and will continue to suffer a loss of the value of enjoyment of life in the future, all in an amount not presently determinable but to be proven at the time of trial.

39.     The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

Complaint ¶¶ 29-39, at 7-10.  Further, the general Statement of Facts portion of the Complaint contains detailed allegations with respect to Dr. Marrocco's treatment of L. Begay at the Northern Navajo Medical Center emergency room.  See Complaint ¶¶ 14-27, at 5-7.  In other words, the Complaint does not specifically identify the Northern Navajo Medical Center physicians, nurses, or staff -- beyond Dr. Marrocco -- who allegedly committed medical

negligence.   In their Response, however, the Begays indicate that they now have identifying

information from various medical records, explaining:

> NNMC's medical records indicate that at least two other members of the medical staff, besides Dr. Marrocco, examined Mr. Begay on March 6, 2014, when his neurological symptoms were dismissed as "pink-eye."  First, Mr. Begay was seen in triage at approximately 5:30 p.m. by Allen Jones, R.N., who noted Mr. Begay's complaints as including "blurry vision" in the patient's "right eye" and that his "left leg and left arm feel funny."   [Visit Summary (Brief), filed November 16, 2015 (Doc. 39-1)].   NNMC's medical records also indicate that a registered nurse, whose signature is illegible, examined Mr. Begay at 9:45 p.m., prior to Dr. Marrocco's examination.   [Emergency Room Medical Records from March 6, 2014 for Lydell Marvin Begay at 10 (dated March 6, 2014), filed November 16, 2015 (Doc. 39-1)].
>
> In addition, Plaintiffs' claim for medical negligence on March 6, 2014 is not limited to the nursing staff.   Plaintiffs have yet been able to discover facts about the chain-of-command and supervision over the Emergency Department on March 6, 2014.   Nor have Plaintiffs been able to determine whether other providers, not reflected in the records, were involved in Mr. Begay's care on that day.   Finally, Count I encompasses negligent conduct on March 13, 2014, a day on which Dr. Marrocco was not working at NNMC.   *See, e.g.*, Complaint, ¶¶ 6 (asserting claim for negligent failure to transmit key diagnostic information; Defendant's Fact No. 3.
>
> On the basis of these allegations and facts, Defendant's motion must be denied as to Count I.   Plaintiffs have adequately alleged in the Complaint that multiple medical staff members at NNMC committed malpractice.   Further, even with little to no discovery, Plaintiffs have set forth factual support for those allegations.

Response at 10-11.

The caption of the United States' Motion states that it is a "Motion to Dismiss for Lack of

Subject Matter Jurisdiction or in the Alternative for Summary Judgment."   Motion at 1.   In the

Motion's argument section, however, it states that it is also moving to dismiss under rule

12(b)(6) for failure to state a claim.   See Motion at 6.   The Court concludes that in addition to it

having subject-matter jurisdiction over Count I to the extent that it is directed against other

Northern Navajo Medical Center staff -- the United States does not allege in its Reply that these other Northern Navajo Medical Center staff are not federal employees -- the Complaint complies with <u>Iqbal</u> and <u>Twombly</u>'s requirements with respect to the Begays' claims against other Northern Navajo Medical Center staff on Count I.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  <u>Twombly</u>, 550 U.S. at 555 (citation omitted).  To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  <u>See</u> <u>Twombly</u>, 550 U.S. at 570; <u>Mink v. Knox</u>, 613 F.3d at 1000.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  <u>Ridge at Red Hawk, LLC v. Schneider</u>, 493 F.3d at 1177 (emphasis omitted).  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

<u>Robbins v. Oklahoma</u>, 519 F.3d at 1247 (quoting <u>Twombly</u>, 550 U.S. at 570)(citations omitted). Here, the Court concludes that the Complaint's allegations with respect to the acts of medical negligence of other Northern Navajo Medical Center staff comply with <u>Iqbal</u> and <u>Twombly</u>'s requirements.  The United States suggests that the Court should require the Begays to be more

specific and name who committed the malpractice and why they committed it. The United States

has not cited a case that requires a party to plead the who and the when, to satisfy Iqbal and

Twombly and the Court has also not found such a case. The Court is reluctant to add further

technical pleading requirements to those that have already developed after Iqbal and Twombly.

The Court concludes the Complaint's references to the "medical staff of NNMC's emergency

room," "the medical staff" at NNMC, "the medical staff and personnel at NNMC," and

"NNMC's physicians and staff" in Count I comply with Iqbal and Twombly's requirements. See

Complaint ¶¶ 14-27, at 5-7; id. ¶¶ 29-39, at 7-10. It is true the Court requires more detail in suits

brought pursuant to 42 U.S.C. § 1983, because in the § 1983 context, a plaintiff can sue only

officers in their individual capacities; the immunity available under the Eleventh Amendment to

the Constitution of the United States of America blocks suits against the state and its agencies.

See Armijo v. State, Dep't of Transp., No. CIV 08-0336, 2009 WL 1329192, at *5 (D.N.M. Apr.

6, 2009)(Browning, J.). If the plaintiff does not identify a defendant by name, it is difficult to

hold anybody liable. Further, John Does do not count. See Gose v. Bd. of Cnty. Com'rs of

Cnty. of McKinley, 778 F. Supp. 1191, 1204-06 (D.N.M. 2011)(Browning, J.). Here, by

contrast, there is one entity that can and is being sued -- the United States -- and it makes less

sense to require a plaintiff to identify particular individuals. Indeed, the plaintiff may be able to

describe in detail his or her medical negligence, but not the many employees who the plaintiff

sees at the hospital. The Court will therefore not require the Begays to amend the Complaint on

Count I with respect to their allegations against other Northern Navajo Medical Center staff

involved in L. Begay's allegedly negligent medical treatment.[47]

---

[47]The Court draws comfort from the fact that the old forms attached to the back of the

## IV.    THE UNITED STATES HAS WITHDRAWN ITS ARGUMENT THAT THE BEGAYS DID NOT EXHAUST THEIR ADMINISTRATIVE REMEDIES WITH RESPECT TO THE NEGLIGENT SUPERVISION AND NEGLIGENT HIRING/CREDENTIALING OF DR. MARROCCO.

At the December 15, 2015, hearing, the United States conceded that the negligent supervision and negligent hiring/credentialing of Dr. Marrocco survives the Motion, but maintained that the negligent supervision, training, or credentialing claim over everybody else does not survive the Motion.  See Tr. at 38:12-15 (Court, Langenwalter).  The parties confirmed

---

Federal Rules of Civil Procedure did not require much for negligence claims before the most recent amendment dropped the forms.  See Fed. R. Civ. P. 84 & App. Form 11.  Form 11 stated:

> 1. (Statement of Jurisdiction -- See Form 7.)
> 2. On *date,* at *place,* the defendant negligently drove a motor vehicle against the plaintiff.
> 3. As a result, the plaintiff was physically injured, lost wages or income, suffered physical and mental pain, and incurred medical expenses of $———.
> Therefore, the plaintiff demands judgment against the defendant for $———, plus costs.

Fed. R. Civ. P. App. Form 11.  No one has suggested that the Supreme Court abrogated the forms -- including Form 11 -- in Iqbal and Twombly.  The United States Court of Appeals for the First Circuit explained prior to the recent amendment which dropped the forms:

> At least two courts of appeals have concluded that the standard announced in *Twombly* and *Iqbal* does not undermine the viability of the federal forms as long as there are sufficient facts alleged in the complaint to make the claim plausible. *See K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.,* 714 F.3d 1277, 1283-84 (Fed. Cir. 2013); *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010).
>
> We share this view.  It pays due homage to Federal Rule of Civil Procedure, which declares that "[t]he forms in the Appendix suffice."  Fed. R. Civ. P. 84. Honoring Rule  84 is, in turn, consistent with the Supreme Court's instruction that the Civil Rules may not be amended by "judicial interpretation."  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).

Garcia-Catalan v. United States, 734 F.3d 100, 104 (1st Cir. 2013).

that the United States had withdrawn its argument regarding the insufficiency of exhaustion on

Counts II and III with respect to Dr. Marrocco:

> THE COURT:  Well, they're saying that for the negligent supervision and hiring of Dr. Marrocco.
>
> MR. COHEN:  Correct.
>
> THE COURT:  But not for anybody else.
>
> MR. COHEN:  Correct.  So claims [2] and 3 stand with respect to Dr. M[ar]rocco by virtue of the United States, which apparently has now withdrawn their argument regarding the insufficiency of the exhaustion.
>
> THE COURT:  I hadn't tied it to the counts, but do you agree with that?
>
> MS. LANGENWALTER:  Yes, Your Honor.

Tr. at 44:18-45:4 (Cohen, Court, Langenwalter).  The Court therefore need not address the

United States' argument that the Begays did not exhaust their administrative remedies with

respect to the negligent supervision and negligent hiring/credentialing of Dr. Marrocco, because

the United States has withdrawn its argument that the Begays did not exhaust that issue.  The

Begays therefore survive summary judgment on Count II and Count III with respect to Dr.

Marrocco.

## V.    MR. AND MRS. BEGAY, BUT NOT L. BEGAY, HAVE EXHAUSTED THEIR ADMINISTRATIVE REMEDIES WITH RESPECT TO THE NEGLIGENT SUPERVISION AND NEGLIGENT HIRING/CREDENTIALING OF OTHER NORTHERN NAVAJO MEDICAL CENTER STAFF, NURSES, AND DOCTORS.

Mr. and Mrs. Begay's March 9, 2015, letters provided sufficient notice of their negligent

supervision and negligent hiring/credentialing claims against other Northern Navajo Medical

Center staff, nurses, and doctors.  The Complaint, however, does not sufficiently identify the

who and the when with respect to the negligent supervision and negligent hiring/credentialing

claims against other Northern Navajo Medical Center staff, nurses, and doctors, as <u>Iqbal</u> and <u>Twombly</u> require.  The Court will allow them, however, to amend the Complaint on Count II and Count III with respect to their negligent supervision and negligent hiring/credentialing claims against other Northern Navajo Medical Center staff, nurses, and doctors to sufficiently identify the who and the when, and to comply with <u>Iqbal</u> and <u>Twombly</u>.  By contrast, L. Began did not exhaust his administrative remedies with respect to the negligent supervision and negligent hiring/credentialing of other Northern Navajo Medical Center staff, nurses, and doctors.

### A. MR. AND MRS. BEGAY EXHAUSED THEIR ADMINISTRATIVE REMEDIES WITH RESPECT TO THE NEGLIGENT SUPERVISION AND NEGLIGENT HIRING/CREDENTIALING OF OTHER NORTHERN NAVAJO MEDICAL CENTER STAFF, NURSES, AND DOCTORS.

Mr. and Mrs. Begay's March 9, 2015, letters provide sufficient notice of their negligent supervision and negligent hiring/credentialing claims against other Northern Navajo Medical Center staff, nurses, and doctors.  <u>See</u> Mr. Begay Claim at 19; Mrs. Begay Claim at 24.  In the Tenth Circuit, Mr. and Mrs. Begay are required to file "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d at 852.  The requirement is "pragmatic" and "should not be interpreted inflexibly."  <u>Estate of Trentadue ex rel. Aguilar v. United States</u>, 397 F.3d at 853.  Here, Mr. and Mrs. Begay satisfy the notice requirement.  First, they both name a sum certain -- $10,000,000.00.  <u>See</u> Mr. Begay Claim at 21; Mrs. Begay Claim at 26.  Second, they both sufficiently describe how negligent supervision and negligent hiring/credentialing caused their son's injury.  <u>See</u> Mr. Begay Claim at 20; Mrs. Begay Claim at 25.  The Mr. Begay Claim states:

> By this letter and accompanying Standard Form 95, please take notice that Marvin Begay, Father of Lydell Marvin Begay, is intending to bring an action against the Indian Health Services for loss of parental services, society and consortium as a result of the Indian Health Services' negligence including, but not limited to, medical negligence, negligent credentialing, negligent supervision, negligent hiring and retention, and negligent credentialing/authorization of staff privileges which severely disabled his son, Lydell Marvin Begay.  His son can no longer move most of his body, can no longer care for himself, and can no longer speak.

Mr. Begay Claim at 20.  The Mrs. Begay claim makes the same claims.  <u>See</u> Mr. Begay Claim at 25.  The DHHS acknowledged receipt of these claims by letter on March 26, 2015, and assigned FTCA claim numbers 2015-0264 and 2015-0265 respectively, to Mr. and Mrs. Begay's claims. After submission of a written claim, the agency usually has six months to reach a final disposition on the claim.  If the agency denies the claim, the claimant has six months to file suit in federal court.  <u>See</u> 28 U.S.C. § 2401(b).  If the agency fails to make a final disposition of the claim within six months, the claimant may "deem[]" that failure a "final denial of the claim," and proceed with his or her suit under the FTCA.  28 U.S.C. § 2675(a).  In this case, six months after Mr. and Mrs. Begay filed their claims -- on September 9, 2015 -- they were deemed denied. They then joined this lawsuit as Plaintiffs in the amended complaint, which was filed on October 30, 2015.  <u>See</u> Complaint at 1.  In sum, Mr. and Mrs. Begay exhausted their administrative remedies with respect to the negligent supervision, and negligent hiring/credentialing, of other Northern Navajo Medical Center staff, nurses, and doctors.

**B.      WITH RESPECT TO THE NEGLIGENT SUPERVISION AND NEGLIGENT HIRING/CREDENTIALING OF OTHER NORTHERN NAVAJO MEDICAL CENTER STAFF, NURSES, AND DOCTORS, THE COURT WILL ALLOW MR. AND MRS. BEGAY TO AMEND THE COMPLAINT TO COMPLY WITH IQBAL AND TWOMBLY'S REQUIREMENTS.**

The Court concludes that, while Mr. and Mrs. Begay exhausted their administrative remedies with respect to the negligent supervision and negligent hiring/credentialing of other Northern Navajo Medical Center staff, nurses, and doctors, the Complaint does not comply with Iqbal and Twombly's requirements.  In other words, Mr. and Mrs. Begay put the United States on notice to explore pre-trial the supervision, hiring, and credentialing issues, though the Complaint does not comply with the Federal Rules of Civil Procedure.  With respect to the negligent supervision claim, in addition to the allegations set forth in the Complaint's general Statement of Facts section, the Complaint alleges:

> 41.     In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant -- by and through the NNMC administrators and/or NNMC medical staff management -- had a duty to properly supervise and provide quality assurance for all health care personnel providing care and treatment for Lydell Begay when he presented to the emergency room at NNMC on March 6 and March 13, 2014.

> 42.     Defendant breached its duty of care with respect to Lydell Begay by failing to adequately supervise and provide quality assurance for its medical staff, including, but not limited to, nurses, physician assistants, nurse practitioners, and physicians, including Dr. Marrocco, in providing care and treatment for Lydell Begay.

> 43.     Defendant knew or should have known that failing to adequately supervise its medical staff -- including staff with a past history of malpractice and licensing sanctions -- would create an unreasonable risk of injury to patients being treated in its emergency room including Lydell Begay.

> 44.     As a direct and foreseeable result of Defendant's failure to adequately or properly supervise, hire, retain, train, instruct, provide quality assurance for, and

supervise its medical staff, Plaintiff Lydell Begay has suffered the injuries and damages described herein.

. . . .

50.    The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

Complaint ¶¶ 40-50, at 10-12.   With respect to the negligent hiring/credentialing claim, in

addition to the allegations set forth in the Complaint's general Statement of Facts section, the

Complaint alleges:

52.    In undertaking the care, treatment, and diagnosis of Lydell Begay, Defendant -- by and through the NNMC administrators and/or NNMC medical staff management -- had a duty to properly screen and properly issue credentials or hospital privileges to all health care personnel providing care and treatment for Lydell Begay when he presented to the emergency room at NNMC on March 6 and March 13, 2014.

53.    Defendant's improper hiring and/or credentialing of Dr. Marrocco, who was providing medical services to Lydell Begay while under a restricted medical license, was inter alia, in violation of Indian Health Manual policy 3-1.4(c)(5), which prohibits the extension of credentialing and staff privileges to physicians with restricted licenses.

54.    Defendant breached its duty of care owing to Lydell Begay by improperly hiring/credentialing Dr. Marrocco and allowing her to exercise staff privileges at NNMC, and allowing her to do so without adequate supervision, which included her care and treatment of Lydell Begay on March 6, 2014.

55.    Defendant knew or should have known that failing to adequately screen, select, credential, and supervise its medical staff would create an unreasonable risk of injury to patients being treated in its emergency room including Lydell Begay.

56.    As a direct and foreseeable result of Defendant's negligent hiring/credentialing of Dr. Marrocco, Plaintiff Lydell Begay has suffered the injuries and damages described herein.

. . . .

62.     The negligent acts and omissions of Defendant as set forth above were committed by Defendant through its employees, agents, representatives, officers, directors and/or designees, and/or were ratified and/or acquiesced to by Defendant through its agents, employees, representatives, officers, directors and/or designees while serving in a managerial capacity.

Complaint ¶¶ 52-62, at 12-14.

Here, the Complaint's references to "nurses, physician assistants, nurse practitioners, and physicians," Complaint ¶ 41, at 10, and "medical staff," Complaint ¶ 43, at 10; id. ¶ 55, at 12, are too generalized, and do not sufficiently identify the who and the when, to comply with Iqbal and Twombly.[48]  Unlike with the medical negligence claims, it is trickier for the Begays to come into Court at the pleading stage and assert negligent supervision and negligent hiring/credentialing claims without naming or identifying the individuals that were negligently supervised or negligently hired/credentialed.  See Griego v. City of Albuquerque, 100 F. Supp 3d 1192, 1227-28 (D.N.M. 2015)(Browning, J.)(holding that, in the Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), context, in asserting a failure to supervise or train claim, plaintiffs must support their allegations with a pattern of similar instances or "other evidence, such as statements from police officers or other APD insiders, or written training materials or oral commands").  Here, the Begays have adequately alleged medical negligence of the Northern Navajo Medical Center staff, but with their supervision, hiring, and credentialing claims, they

_____

[48]As stated above, the caption of the United States' Motion states that it is a "Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Summary Judgment." Motion at 1.  In the Motion's argument section, however, the United States asserts that it is also moving to dismiss under rule 12(b)(6) for failure to state a claim.  See Motion at 6.  Further, in its Reply, the United States maintains that the Complaint does not set forth any facts which could be "sued to support a claim for negligent supervision or hiring of any other provider."  Reply at 12 (citing Twombly, 550 U.S. at 544).  In other words, the Court construes the Motion as also asking the Court to dismiss Count II and Count II for failure to state a claim under rule 12(b)(6).

have not said much more to explain why, because there was negligence, there must have been negligent hiring, supervision, and credentialing.  There can be medical negligence without negligent supervision, hiring, and credentialing.  Even the best and most careful hospitals when it comes to supervision, hiring, and credentialing, may commit medical negligence.  So a plaintiff must allege more to make out negligent supervision, hiring, and credentialing claims.  Without more, the allegations that the Complaint sets forth are conclusory and speculative.  The supervision, hiring, and credentialing claims are not plausible, because it is just as likely that there was medical negligence without negligent supervision, hiring, and credentialing as there was with such negligence.  The Begays must give more details why they think the problem here is supervision, hiring, and credentialing, rather than say, a one-time bad decision.  They must state why they suspect the problem lies with supervision, hiring, and credentialing.  The Court will allow, however, Mr. and Mrs. Begay to amend their Complaint on Count II and Count III with respect to the other Northern Navajo Medical Center staff, nurses, and doctors to sufficiently identify the who and the when, and to comply with Iqbal and Twombly.

C. **L. BEGAY DID NOT EXHAUST HIS ADMINISTRATIVE REMEDIES WITH RESPECT TO THE NEGLIGENT SUPERVISION AND NEGLIGENT HIRING/CREDENTIALING OF OTHER NORTHERN NAVAJO MEDICAL CENTER STAFF, NURSES, AND DOCTORS.**

The Court concludes that L. Begay did not exhaust his administrative remedies with respect to the negligent supervision and negligent hiring/credentialing of other Northern Navajo Medical Center staff, nurses, and doctors.  "The jurisdictional statute, 28 U.S.C. § 2675(a), requires that claims for damages against the government [first] be presented to the appropriate federal agency by filing (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  Trentadue v.

United States, 397 F.3d at 852 (citations omitted).   The notice requirement's purpose is to "'allow the agency to expedite the claims procedure and avoid unnecessary litigation by providing a relatively informal nonjudicial resolution of the claim.'"   Trentadue v. United States, 397 F.3d at 852 (quoting Mellor v. United States, 484 F. Supp. 641, 642 (D. Utah 1978)).   In accordance with that purpose, although a plaintiff's administrative claim "need not elaborate all possible causes of action or theories of liability," it must provide notice of the "facts and circumstances" underlying the plaintiff's claims.   Trentadue v. United States, 397 F.3d at 852.

In this case, L. Begay's original administrative claim, which was submitted to the United States on May 19, 2014, states:

> The basis of the claim is that our client, Lydell Begay accompanied by Chastity Bedah (the mother of Lydell's 5 month old daughter) went to the Indian Health Services Clinic and Medical Facility in Shiprock, New Mexico on March 6, 2014 complaining of dizziness, severe headaches, unsteadiness and blurred vision.  He was not examined but told at that time that he should go home rest and take aspirin and eye drops at home and report back if he didn't feel better.  He did not feel better and did report back with same symptoms.  On his next visit to the IHS Shiprock, some radiographic imaging was done that clearly showed a blood clot in the basil ganglia of Lydell Begay's head and neck area.  Nothing was done to assist him with the blood clot, including additional testing or diagnostic procedures without which no meaningful treatment could be rendered nor was and he was transferred to UNMH via airplane then taken by ambulance to the UNMH on the 13th day of March, 2014.

> By this letter, please be notified that Marty Begay, Father, Parent, and Next Friend of Lydell Marvin Begay, is intending to bring an action against Indian Health Services.  Similar tort notices have been timely sent to the United States District Attorney's Office.

Claim for Damage, Injury or Death at 3 (dated May 19, 2014), filed October 16, 2015 (Doc. 24-1)("L. Begay Claim").  The above-described basis of L. Begay's administrative claim revolves entirely around the details of the alleged negligent treatment of L. Begay.  By contrast, the alleged negligent supervision claim -- Count II -- focuses on the failure of Northern Navajo

Medical Center administrator and/or Northern Navajo Medical Center medical staff management to properly supervise its medical staff providing care and treatment for L. Begay.  Similarly, the alleged negligent hiring/credentialing claim -- Count III -- focuses on the improper hiring and/or credentialing of its medical staff.  Based on the comparison of L. Begay's administrative claim to the claims L. Begay now asserts -- Counts II and III -- the Court holds that, under the FTCA, L. Begay's May 19, 2014, administrative claim provided insufficient notice to the United States with respect to the negligent supervision and negligent hiring/credentialing causes of action.  See Kikumura v. Osagie, 461 F.3d at 1302 (finding failure to exhaust with respect to FTCA claim for "negligent failure to provide adequate training and supervision to staff," because administrative claim alleged facts relating only to negligent care while ill); Staggs v. United States, 425 F.3d at 884-85 (finding failure to exhaust FTCA claim for lack of informed consent, because administrative claim alleged only a substantial departure from the standard of care, and no facts specific to negligent management of plaintiff's pregnancy and labor); Bethel v. U.S., ex rel. Veterans Admin. Medical Center of Denver, Colorado, 495 F. Supp. 2d at 1124 (explaining that negligent credentialing is "separate and apart from the alleged medical negligence" that may occur during a procedure).

The Begays assert, however, that L. Begay exhausted his administrative remedies with respect to the negligent supervision and negligent hiring/credentialing claims in two amendments that he filed in October, 2014.  See Response at 19-21.  L. Begay submitted two amendments to his FTCA notice -- one on October 24, 2014, and one on October 29, 2014.  See Oct. 24th Letter at 5; Oct. 29th Letter at 7.  Both amendments, however, focus entirely on the hiring, supervision, and credentialing of Dr. Marrocco.  See Oct. 24th Letter at 5-6; Oct. 29th Letter at 7-9.  Neither

the Oct. 24th Letter nor the Oct. 29th Letter refer, for example, to other Northern Navajo

Medical Center staff, physicians, or nurses, or to other medical personnel.  In other words, while

the Oct. 24th Letter and the October 29th Letter may have provided sufficient notice to the

United States with respect to the negligent supervision and negligent hiring/credentialing of Dr.

Marrocco, they did not provide sufficient notice of the negligent supervision and negligent

hiring/credentialing of other Northern Navajo Medical Center staff, physicians, and nurses.

Finally, L. Begay submitted a new administrative claim after the United States filed its Motion.

See Claim for Damage, Injury, or Death at 33 (dated October 27, 2015), filed October 27, 2015

(Doc. 39-1)("Oct. 27th Letter").  In the Oct. 27th Letter, L. Begay for the first time refers to the

negligent supervision and negligent hiring/credentialing of medical personnel other than Dr.

Marrocco, stating:

> By this letter and accompanying Standard Form 95, please take notice that
> Marty Begay, Father and Next of Friend of Lydell Marvin Begay, an
> incapacitated person, is intending to bring an action against the Indian Health
> Services as a result of the Indian Health Services' negligent credentialing, hiring,
> training, staffing supervision, and retention of physicians, nurses, and other health
> care providers including, *but not limited to*, Annicol Marrocco, M.D., who
> provided Lydell medical care and treatment on March 6 and March 13, 2014 at
> NNMC.

Oct. 27th Letter at 34 (emphasis in original).  The Court agrees with the United States, however,

that L. Begay's Counts II and III against Northern Navajo Medical Center staff -- other than Dr.

Marrocco -- are  premature, because L. Begay first filed his administrative claim providing

notice of the alleged negligent supervision and negligent hiring/credentialing of other Northern

Navajo Medical Center staff on October 27, 2015, long after he filed this lawsuit on April 28,

2015.  As a jurisdictional perquisite, the FTCA bars a claimant from bringing suit in federal court

unless he or she filed an administrative claim with the appropriate federal agency and either

obtained a written denial or waited six months.  See 28 U.S.C. § 2675(a).  At the time L. Begay

filed suit on April 28, 2015, L. Begay had not exhausted his administrative remedies with respect

to the negligent supervision and negligent hiring/credentialing of other Northern Navajo Medical

Center staff.   In <u>McNeil v. United States</u>, 508 U.S. 106 (1993), the Supreme Court held that

failure to completely exhaust administrative remedies prior to filing an FTCA claim is a

jurisdictional defect that cannot be cured by administrative exhaustion after a lawsuit is filed.

<u>See</u> 508 U.S. at 112.  L. Begay's administrative claim with respect to the negligent supervision

and negligent hiring/credentialing of other Northern Navajo Medical Center staff was not denied,

if at all, until after this lawsuit was filed.  The Court therefore concludes that L. Begay did not

exhaust his administrative remedies with respect to the negligent supervision and negligent

hiring/credentialing of other Northern Navajo Medical Center staff, nurses, and doctors.

**IT IS ORDERED** that the requests in the United States of America's Motion to Dismiss

for Lack of Subject Matter Jurisdiction or in the Alternative for Summary Judgment, and

Memorandum in Support, filed October 16, 2015 (Doc. 24), are granted in part and denied in

part.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Seth T. Cohen
Cynthia Zedalis
Cohen & Zedalis LLP
Santa Fe, New Mexico

-- and --

Turner W. Branch
Margaret Moses Branch
Branch Law Firm
Albuquerque, New Mexico

       *Attorneys for the Plaintiffs*

Damon P. Martinez
  United States Attorney
Erin Langenwalter
  Assistant United States Attorney
Albuquerque, New Mexico

       *Attorneys for the Defendant*